[No. B171051. Second Dist., Div. Seven. June 14, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
FELIZARDO VEGA et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, II, IV, V and VI.

**COUNSEL**

Gregory L. Cannon, under appointment by the Court of Appeal, for Defendant and Appellant Felizardo Vega.

Cheryl Barnes Johnson, under appointment by the Court of Appeal, for Defendant and Appellant Jose L. Vega.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Jeffrey B. Kahan and Lauren E. Dana, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**JOHNSON, J.**—Defendants Felizardo and Jose Vega[1] appeal their convictions and sentences for conspiracy to transport cocaine and conspiracy to possess cocaine for sale. We affirm the convictions but reverse and modify portions of the sentences. We reverse the sentence for conspiracy to possess cocaine because, as the People concede, the only punishable conspiracy was the conspiracy to transport cocaine. We reverse imposition of the "criminal laboratory analysis fee" because it does not apply to defendants convicted of conspiracy to transport cocaine.

---

[1] Because both defendants have the same last name we will refer to them in the future by their first names.

## FACTS AND PROCEEDINGS BELOW

Law enforcement officers obtained a warrant to wiretap a telephone belonging to defendant Felizardo whom they suspected of dealing cocaine. The court issuing the wiretap warrant sealed the portions of the affidavit referring to two confidential informants and an undercover agent.

The officers recorded over 260 hours of Felizardo's telephone calls including his conversations with codefendant Jose and a third suspect Jaime Salazar. The officers used the records of these conversations along with the wiretap affidavit and other information to obtain search warrants for the homes and automobiles belonging to Felizardo, Jose and Salazar. The court sealed the entire affidavit for the search warrant, not just the portion referring to the confidential informants.

A search of Salazar's home resulted in the seizure of two tubs containing 42 "kilo-sized" bricks of cocaine; 20 bricks were in one tub and 22 in the other. At Felizardo's home officers seized a piece of green graph paper, which may have contained records of drug transactions, and approximately $9,000 in cash. At Jose's home officers found a bank deposit receipt in the amount of $10,000 and approximately $2,000 in cash.

Felizardo and Jose were arrested and charged with conspiracy to transport cocaine and conspiracy to possess cocaine for the purpose of sale.

Defendants moved to suppress the evidence seized as a result of the wiretap and search warrants, to quash and traverse the warrants and to unseal the sealed portions of the affidavits referring to the confidential informants. Because defendants did not have access to the affidavits supporting the warrants at the time they made these motions the defendants asked the trial court to review the affidavits in camera pursuant to the procedures set out in *People v. Hobbs*[2] to determine whether all or some of the confidential informants' information should be unsealed and, if not, to determine whether the affidavits contain false statements or fail to establish probable cause for the searches.

The People filed responses to the defendants' motions and attached redacted copies of the affidavits deleting only the three paragraphs referring to two confidential sources and an undercover agent. This affidavit was originally prepared to obtain the wiretap and was incorporated into the second affidavit for the search warrant.

The trial court reviewed the unredacted affidavits in camera and conducted an in camera examination of the officer who prepared the warrant applications

---

[2] *People v. Hobbs* (1994) 7 Cal.4th 948 [30 Cal.Rptr.2d 651, 873 P.2d 1246].

to determine whether the confidential informant information should remain sealed. Following this review the court made the following findings: (1) disclosure of the informants' identity or the contents of their information would not be of assistance to the defense on the issue of guilt; (2) there was insufficient evidence of false statements or deliberate omissions in the affidavits to require quashing the warrants; (3) there was no violation of the wiretap statute; (4) probable cause existed for the wiretap and search warrants; and (5) it was necessary the confidential informant information remain sealed. Accordingly the court denied the motions to reveal the identities of the confidential informants, to quash or traverse the warrants and to exclude the evidence seized under them.

At trial a contract employee of the federal Drug Enforcement Administration (DEA) testified she monitored the calls from Felizardo's telephone and translated the calls from Spanish to English. From listening to approximately 240 hours of conversations she was able to identify the voices of the defendants as those of persons called "Nando" and "Luis" on the monitored conversations.

A jury convicted defendants of the crimes charged. As to the transportation charge the jury found the cocaine exceeded 20 kilograms and as to the possession for sale charge it found the cocaine exceeded 40 kilograms.

The trial court sentenced Felizardo to the middle term of three years on the possession for sale conviction plus a consecutive 20 years for the weight enhancement. On the transportation conviction the court imposed the middle term of four years plus a 15-year weight enhancement but ordered those terms stayed. The court also imposed the following fines and fees: a $9,200 restitution fine; a $9,200 parole revocation fine (stayed); a laboratory analysis fee in the amount of $50 plus penalty assessments; and a $20 court security fee.

The court sentenced Jose to the upper term of four years on the possession conviction and a consecutive 20 years for the weight enhancement. The court imposed and stayed a sentence for the transportation conviction consisting of the upper term of five years enhanced by 15 years for the weight of the cocaine. In addition the court ordered Jose to pay restitution in the amount of $9,600 and a parole revocation fine in the same amount. The revocation fine was stayed. Finally the court imposed a laboratory analysis fee of $50 plus penalty assessments; and a $20 court security fee.

Both defendants filed timely appeals.

## DISCUSSION

I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III. *SUFFICIENT EVIDENCE SUPPORTS THE WEIGHT ENHANCEMENTS.*

■ Health and Safety Code section 11370.4, subdivision (a) imposes increasing levels of punishment for the transportation and possession of "a substance containing . . . cocaine" depending on the weight. If the weight is between 10 and 20 kilograms the punishment is an additional 10 years.[16] If the weight is between 20 and 40 kilograms the punishment is an additional 15 years.[17] And if the weight is between 40 and 80 kilograms the punishment is an additional 20 years.[18] Thus one additional milligram in one package containing cocaine can add five additional years to the defendant's sentence.

Here the jury found the weight of the cocaine transported was between 20 and 40 kilograms[19] and the total weight of the cocaine exceeded 40 kilograms. Defendants contend the evidence was insufficient to support these findings. We disagree.

The only witness on the weight of the cocaine in this case was Tracy Arnold, a criminalist employed by the Los Angeles County Sheriff's Department. Arnold testified at the time she examined the cocaine seized in this case she had been testing drugs in 40 to 50 cases a week for more than two years.

Arnold received the cocaine still in the two tubs as seized by the police. One tub contained 22 bricks wrapped in black electrical tape. The other contained 20 bricks wrapped in clear plastic. The bricks were consistent with kilogram-sized packages. Arnold tested all the bricks and determined they each held a substance containing cocaine. The bricks of cocaine were not introduced into evidence so the jurors could examine them for themselves.

---

*See footnote, *ante*, page 183.

[16] Health and Safety Code section 11370.4, subdivision (a)(3).

[17] Health and Safety Code section 11370.4, subdivision (a)(4).

[18] Health and Safety Code section 11370.4, subdivision (a)(5).

[19] The jury apparently accepted the evidence the 20 bricks in one of the tubs (the "transportation" tub) were the ones defendants conspired to transport and this tub originally contained 21 bricks but one brick went to a third party before the police executed the search warrant. Criminalist Tracy Arnold estimated the average weight of the bricks in the "transportation" tub was 979.55 grams. She estimated the 20 bricks weighed 19,591 grams so if the missing brick weighed at least 410 grams the total estimated weight of the cocaine in the transportation tub would exceed 20 kilograms.

The prosecution did, however, introduce photographs of all the bricks seized. Arnold testified the bricks in the photographs were similar to the ones she examined in this case but she could not say for sure they were the same ones.

To determine the weight of the cocaine Arnold first weighed each brick with its wrappings in place. She then selected eight bricks from the two tubs, removed their wrappings and weighed the powder alone to "get an approximation of the packages' weight of all the items." She did not state how many bricks she took from each tub. She did state, however, in selecting which bricks to weigh she took "ones that look[ed] smaller and bigger to try to get a representative number."

Arnold testified she computed the average net weight of the cocaine in the bricks by dividing the weight of the cocaine substance by the number of bricks tested.[20] On the basis of this sampling she formed the opinion the cocaine substance in the tub containing 20 packages had "an estimated total net weight of approximately 19,591 grams of powder containing cocaine." She also formed the opinion the cocaine substance in the tub containing 22 packages had "an estimated total net weight of approximately 21,896 grams of powder containing cocaine." Thus, according to Arnold's calculations, the total weight of the substance containing cocaine was 41,487 grams or 41.487 kilograms.

Defendants produced no evidence contradicting Arnold's testimony or challenging her method of calculating the weight of the cocaine substance. They did ask Arnold why she did not weigh each of the 42 bricks without its wrapper. Arnold explained she would have done so if her estimate of their weight had been close to the margin of one of the enhancement weights but because her estimate "far exceeded" the 40 kilogram enhancement level she felt it was not necessary to determine the actual net weight of each individual brick. She conceded she did not know the exact weight of the substance containing cocaine and that "if I wanted the exact weight of each one I would have to take an exact net weight of each one."

On appeal defendants contend taking an exact net weight of each brick was exactly what Arnold should have done. Her failure to do so, they argue, requires the enhancements be reversed for insufficiency of the evidence. We disagree.

■ The test for sufficiency of the evidence is whether substantial evidence supports the jury's finding, not whether in our view the evidence

---

[20] Although it is not clear from her testimony Arnold apparently weighed the cocaine in the bricks from the tub containing 20 bricks separately from the cocaine in the bricks from the tub containing 22 bricks.

proves the fact beyond a reasonable doubt.[21] ■ Furthermore, the testimony of a single witness, including an expert witness, is sufficient to constitute substantial evidence to support a jury's finding.[22] ■ Finally, in evaluating the sufficiency of the evidence we not only consider the evidence actually presented but also presume in support of the jury's finding the existence of every fact the jury could reasonably deduce from the evidence.[23]

The evidence viewed in the light most favorable to the judgment[24] reasonably justifies the jury's findings as to the weight of the cocaine.

Arnold testified without objection the 42 bricks found at Salazar's home were consistent with one-kilogram-sized packages of cocaine. After obtaining the total gross weight of all 42 bricks Arnold calculated the total weight by unwrapping and weighing eight representative-sized bricks and multiplying the bricks' average weight by 42. Arnold stated without contradiction the method she used to arrive at the total weight of the bricks was "standard laboratory policy." Using this methodology Arnold testified (again without objection) the packages seized at Salazar's home had a total weight of 41.487 kilograms—21.896 kilos in one tub and 19.591 kilos in the "transportation" tub. Arnold's conclusions are consistent with the intercepted telephone conversations in which defendants discuss transporting "21 kilos."

Evidence of probability calculations was held sufficient circumstantial evidence to uphold a weight enhancement in *People v. Peneda*.[25] There the defendant was convicted of possession and transportation of cocaine and the jury found the total amount of cocaine exceeded 100 pounds, which resulted in a sentence enhancement of 15 years under former Health & Safety Code section 11370.4. The weight evidence consisted of the testimony of a criminologist who, like Arnold in the present case, weighed a representative sampling of the bricks seized and calculated the total weight of the seized cocaine exceeded 100 pounds.[26] On appeal the defendant argued the sampling evidence was insufficient to sustain a finding the cocaine exceeded 100 pounds. The Court of Appeal rejected this argument. It noted, "there was *no* testimony to contradict [the criminalist's] assessment of the weight being in

---

[21] *People v. Mincey* (1992) 2 Cal.4th 408, 432 [6 Cal.Rptr.2d 822, 827 P.2d 388].

[22] Evidence Code section 411; *People v. Smith* (1995) 31 Cal.App.4th 1185, 1190 [37 Cal.Rptr.2d 524].

[23] *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].

[24] *People v. Ochoa, supra,* 6 Cal.4th at page 1206.

[25] *People v. Peneda* (1995) 32 Cal.App.4th 1022, 1031 [38 Cal.Rptr.2d 312].

[26] *People v. Peneda, supra,* 32 Cal.App.4th at pages 1027–1028.

excess of 100 pounds," and this testimony "supported the ultimate conclusion: there was more than 100 pounds of . . . cocaine [seized]."[27]

Defendants' true quarrel is not with the sufficiency of the evidence but with the foundation for Arnold's expert testimony as to the weight of the bricks. This would be a different case and the outcome might have been different had defendants objected to Arnold's testimony as lacking a sufficient scientific basis.[28]

In *People v. Peneda*, for example, the criminalist used a sampling technique developed by the DEA which indicated how many samples from a total number must be tested to arrive at a " 'reliable'—i.e., within 99 percent accuracy—determination of cocaine weight and nature."[29] Using this formula the criminalist determined there was only one chance in 300 million the shipment at issue did *not* contain at least 100 pounds of cocaine.[30] Furthermore the court noted "[t]he jury was free to compare the selected bricks with the rest contained in each shipment [and] decide for itself whether the sampling was truly random."[31]

In the present case, by contrast, Arnold did not testify she used the DEA's 99 percent accurate statistical model or any other statistical model generally accepted in the scientific community. Nor did she explain why she sampled eight of the 42 bricks rather than 15 or five or some other number. A sample which is 99 percent accurate is clearly more reliable and of more solid value than a sample which is "relatively accurate." Furthermore, defendants point out, Arnold did not represent she had any expertise in statistics. She testified the method she followed to determine the cocaine's total net weight was "standard laboratory policy" but the prosecution introduced no evidence as to what that policy was, especially with respect to the percentage of bricks to be sampled and how the bricks should be selected. Finally, unlike the jury in *Peneda*, the jury in the present case was not "free to compare the selected bricks with the rest" and "decide for itself whether the sampling was truly random."[32] The jury was shown photographs of the bricks taken at the Salazar residence where they were seized. There was no evidence as to which bricks in the photographs Arnold selected for weight testing. The bricks appear to be approximately the same size but they are clearly not identical.

---

[27] *People v. Peneda, supra,* 32 Cal.App.4th at page 1031.

[28] Evidence Code section 801, subdivision (b) states an expert opinion must be based on matter "that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates[.]"

[29] *People v. Peneda, supra,* 32 Cal.App.4th at page 1029.

[30] *People v. Peneda, supra,* 32 Cal.App.4th at page 1029.

[31] *People v. Peneda, supra,* 32 Cal.App.4th at page 1031.

[32] *People v. Peneda, supra,* 32 Cal.App.4th at page 1031.

Arguably Arnold's sampling method does not support her opinion about the weight of the drugs in this case. Given her admission the bricks varied in weight there will almost invariably be a discrepancy between the average sample weight and the true weight. How big a discrepancy depends, among other things, on the number of bricks sampled and the weight of these bricks compared to those not sampled. But even if the discrepancy is small it may become very significant when multiplied by the aggregate of the drug in question.[33] Arnold's testimony provided no answers to the following questions: How many bricks out of 42 should be sampled to obtain a statistically reliable estimate of the total weight? Did the eight bricks Arnold weighed consist of four bricks from one tub and four from the other? If not, what was the ratio? How does that ratio affect the ultimate estimate of weight, if at all? What is the significance, if any, of the fact the average weight of the 20 bricks in the "transportation" tub appears to have been less than the average weight of the bricks in the other tub?

But even if Arnold's sampling technique was statistically valid it produced a result which by her own admission was insufficient to support the enhancements imposed in this case. Arnold admitted the weight she assigned to the cocaine was "approximate" and "relatively accurate" but to determine the exact weight each brick would have to be opened and its contents weighed.

We find Arnold's admission troubling because the law does not authorize imposing a 20-year enhancement where the cocaine "exceeds *approximately* 40 kilograms." Furthermore, imposition of a weight enhancement requires proof beyond a reasonable doubt, not merely proof which is "approximate" or "relatively accurate." When a penalty as serious as 20 years' imprisonment may hinge on a single gram of cocaine it does not seem to be asking too much to require the prosecution to prove the weight of the drugs by the most scientifically accurate method available.[34]

Before leaving this topic it is appropriate to observe this whole issue could have been avoided if the sheriff's department had simply weighed the cocaine. If the drugs had been weighed on a properly calibrated scale defendants would have found it difficult if not impossible to dispute the

---

[33] Arnold calculated the bricks in the "transportation" tub weighed an average of 979.55 grams. (See fn. 19, *ante.*) On the basis of this calculation defendants received a 15-year enhancement on the transportation conviction. If Arnold's estimate was off by 28 grams (the equivalent of one ounce) the total weight of the bricks would have been 19.98 kilos, three grams short of the 20 kilogram weight necessary for the enhancement.

[34] Indeed two state supreme courts have held as a matter of law to prove the weight of drugs the prosecution must either offer evidence of the drug's actual measured weight or demonstrate the quantity of the drugs is so large as to permit a reasonable inference the weight has been established. (*Halsema v. State* (Ind. 2005) 823 N.E.2d 668; *State v. Mitchell* (1994) 336 N.C. 22 [442 S.E.2d 24].)

result. In reality this case should not be about opinion at all. The drugs weigh what they weigh. Unless the defendants can prove the criminalist had her thumb on the scale the weight of the drugs would be virtually unassailable. Contrary to the suggestion in *Peneda* that actually weighing the drugs would be too burdensome on law enforcement agencies,[35] Arnold testified her agency does weigh every gram of the drug in question if the estimated weight is "close" to the margin for a higher enhancement penalty. We suggest this procedure be reversed and the weight of the drugs be determined by actual measurement except in cases where the estimated weight is so far above the minimum level required for the enhancement no rational person could dispute the requisite level exists.

Because defendants failed to move to exclude Arnold's testimony on the ground of lack of foundation they waived that argument on appeal. Evidence Code section 353 states in relevant part: "A verdict or finding shall not be set aside . . . by reason of the erroneous admission of evidence unless . . . [¶] . . . [t]here appears of record an objection to or a motion . . . to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion[.]" As our Supreme Court has explained, "[t]he rationale for this rule is clear; a contrary rule would deprive the party offering the evidence of any opportunity to cure the defect at trial and would permit the nonobjecting party to gamble that the error will provide grounds for reversal of the matter."[36] Here the absence of an objection based on lack of foundation was prejudicial to the People because had such an objection been made and sustained the People could have gone back to the laboratory and weighed the bricks or applied a more statistically reliable method of estimating their weight.

IV.–VI.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

VII. *THE "CRIMINAL LABORATORY ANALYSIS FEE" (HEALTH AND SAFETY CODE SECTION 11372.5) DOES NOT APPLY TO PERSONS CONVICTED OF CONSPIRACY TO TRANSPORT OR POSSESS COCAINE.*

The trial court imposed on each defendant a "criminal laboratory analysis fee" in the amount of $50 plus penalty assessments pursuant to Health and Safety Code section 11372.5, subdivision (a).

---

[35] *People v. Peneda, supra,* 32 Cal.App.4th at page 1027, footnote 7.
[36] *People v. Coleman* (1988) 46 Cal.3d 749, 777 [251 Cal.Rptr. 83, 759 P.2d 1260].
*See footnote, *ante,* page 183.

The laboratory fee applies to persons convicted of violating Health and Safety Code sections 11351 (possession of cocaine for sale) and 11352 (transportation of cocaine) but the statute makes no mention of persons convicted of *conspiracy* to commit those crimes. On the other hand there are numerous demonstrations the Legislature knows how to *include* conspiracy to commit an offense in a penalty statute when it wishes to do so. The weight enhancement statute discussed in part III, *ante*, provides one such example. It states: "Any person convicted of a violation of, or of a conspiracy to violate section 11351 . . . or 11352 with respect to a substance containing . . . cocaine . . . shall receive an additional term as follows . . . ."[50] Therefore, defendants argue, the statute does not apply to them.

This argument, however, overlooks Penal Code section 182, subdivision (a), which provides (with some exceptions not relevant here) when the defendants have been convicted of conspiring to commit a felony "they shall be punished in the same manner and to the same extent as is provided for the punishment of that felony." Thus, if the laboratory analysis "fee" is a "punishment" then defendants convicted of conspiracy to commit one of the felonies specified in Health and Safety Code section 11372.5, subdivision (a) are liable for that fee.

A cogent argument can be made from the language of Health and Safety Code section 11372.5, subdivision (a) the Legislature intended the $50 laboratory " fee" to be an additional punishment for conviction of one of the enumerated felonies. Subdivision (a) of the statute states in relevant part: "Every person who is convicted of a violation of Section 11350 [or] 11352 . . . shall pay a criminal laboratory analysis fee in the amount of fifty dollars ($50) for each separate offense. The court shall *increase the total fine* necessary *to include this increment*." (Italics added.) The same subdivision also provides: "With respect to those offenses specified in this subdivision for which a fine is not authorized by other provisions of law, the court shall, upon conviction, impose a *fine* in an amount not to exceed fifty dollars ($50), *which shall constitute the increment prescribed by this* section and which shall be in addition to any other *penalty* prescribed by law." (Italics added.)

Support for this interpretation of the statute can also be found in *People v. Talibdeen* in which our Supreme Court held the penalty assessments applicable to " 'every fine, penalty, or forfeiture' " applied to the laboratory analysis fee in Health and Safety Code section 11372.5.[51]

---

[50] Health and Safety Code section 11370.4, subdivision (a).

[51] *People v. Talibdeen* (2002) 27 Cal.4th 1151, 1153–1154 [119 Cal.Rptr.2d 922, 46 P.3d 388].

*Talibdeen* is not controlling, however, because the court did not address the question whether the laboratory analysis fee was a punishment. Rather, the court and the parties in *Talibdeen* proceeded under the assumption the fee was a punishment and addressed the question whether the trial court had discretion to waive the penalty assessments.[52]

 Furthermore, the label the Legislature places on a charge, whether "fee" or "fine," is not determinative, especially where as here the Legislature used both terms. Courts have developed multipart tests for determining whether something is a " punishment"[53] but it would needlessly prolong this opinion to engage in a detailed analysis of every factor. In most cases the determination can be made on the basis of the purpose of the charge imposed. Fines are imposed for retribution and deterrence; fees are imposed to defray administrative costs. It is clear to us the main purpose of Health and Safety Code section 11372.5 is not to exact retribution against drug dealers or to deter drug dealing (given the amount of money involved in drug trafficking a $50 fine would hardly be noticed) but rather to offset the administrative cost of testing the purported drugs the defendant transported or possessed for sale in order to secure his conviction. The legislative description of the charge as a "laboratory *analysis* fee" strongly supports our conclusion, as does the fact the charge is a flat amount, it does not slide up or down depending on the seriousness of the crime, and the proceeds from the fee must be deposited into a special "criminalistics laboratories fund" maintained in each county by the county treasurer.[54]

For the reasons set forth above we conclude the trial court erred in imposing a laboratory analysis fee and accompanying penalty assessments on defendants.

## DISPOSITION

With respect to defendant Felizardo Vega the sentence on count two (conspiracy to possess cocaine) is reversed and the laboratory analysis fee and related penalty assessments are stricken. The cause is remanded to the trial court with directions to lift the stay on the sentence on count one and to amend the abstract of judgment to reflect the middle term sentence on that count. In all other respects the judgment is affirmed.

[52] *People v. Talibdeen, supra,* 27 Cal.4th at page 1153.

[53] See discussion in *In re Alva* (2004) 33 Cal.4th 254, 266–269 [14 Cal.Rptr.3d 811, 92 P.3d 311].

[54] Health and Safety Code section 11372.5, subdivision (b).

With respect to defendant Jose Vega the sentence on count two (conspiracy to possess cocaine) is reversed and the laboratory analysis fee and related penalty assessments are stricken. The cause is remanded to the trial court with directions to lift the stay on the sentence on count one. In all other respects the judgment is affirmed.

Perluss, P. J., and Woods, J., concurred.

Appellants' petition for review by the Supreme Court was denied September 21, 2005. George, C. J., did not participate therein.