Filed 5/1/15

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

# IN AND FOR THE COUNTY OF NEVADA

# SITTING AS APPELLATE DIVISION

| THE PEOPLE, | CASE NO: AP14-0020 |
|---|---|
| *Plaintiff/Respondent*, | OPINION<br>Certified for Publication |
| v. | |
| ZACK URIAH MOORE III, | |
| *Defendant/Appellant*. | |

Zack Uriah Moore III ("Moore") appeals his conviction by a jury trial of violations of Health and Safety Code section 11550(a) for being under the influence of a controlled substance, and of Penal Code section 602(o) for trespassing on private property. At sentencing the trial court imposed penal fines with penalty assessments, two restitution fund fines, and two court operations fees and court facilities fees. In addition, the trial court imposed a criminal laboratory analysis fee of $50.00 under Health and Safety Code section 11372.5.[1] The trial court levied penalty assessments against that fee, pursuant to authority from the Fifth District Court of Appeal in *People v. Sierra* (1995) 37 Cal.App.4th 1690, thereby increasing that fee to $183.75.

---

[1] All future references are to the Health and Safety Code unless otherwise specified.

Moore challenges his conviction on the grounds that his defense attorney was ineffective for allegedly failing to challenge under *Miranda* the questioning of Moore during his detention by the deputy who eventually arrested him, and for failing to call an expert witness to refute evidence of Moore's being under the influence of a central nervous system stimulant.

In addition to those challenges, consistent with our obligation to correct errors in the imposition of fines (*People v. High* (2004) 119 Cal.App.4th 1192, 1200), the court invited the parties to brief the issue of the propriety of imposing penalty assessments against the criminal lab fee of $50.00 imposed as a part of the sentence on the Section 11550(a) violation.

We affirm the conviction and remand to the trial court to correct errors in imposition of fines and penalty assessments.

**The Case Presented**

Moore was arrested at the home of his estranged girlfriend after law enforcement responded to a 911 call from the victim's daughter. Nevada County Sheriff's Deputy Grotke responded on April 19, 2013 and was permitted to enter the home by the daughter of the victim. Deputy Grotke first interviewed the victim, who reported that she had locked herself in her bedroom to escape an argument with Moore. The victim also reported that she had asked Moore to leave her home, which he refused.

Deputy Grotke then found Moore on the back deck of the home. He admitted that he had been asked to leave and displayed objective symptoms of being under the influence, such as instability, fidgeting, and constricted pupils. Deputy Grotke conducted a drug abuse evaluation and concluded that Moore was under the influence of a central nervous system stimulant ("CNS"). Grotke then arrested Moore for being under the influence in violation of Section 11550(a), and for trespassing in violation of Penal Code section 602(o).

2

After a two day trial, a jury convicted Moore on both charges. The court sentenced Moore to a three year grant of summary court probation, 110 days in custody, and imposed fines and fees of $986.25.[2] Included among those fines and fees was a $50.00 criminal lab fee under Section 11372.5, plus penalty assessments increasing that fee to $183.75, and two separate restitution fund fines of $150.00 each. Moore timely filed his notice of appeal.

## Standard of Review

In a challenge based on alleged ineffective assistance of counsel, appellant must demonstrate: (1) that that conduct of the attorney fell below an objective standard of reasonableness; and (2) that but for counsel's alleged errors or misconduct, it is reasonably probable that a determination more favorable to the appellant would have resulted. *People v. Mesa* (2006) 144 Cal.App.4th 1000, 1007.

On the question of the imposition of penalty assessments against the criminal lab fee, we are presented with a question of statutory interpretation, which is a pure question of law. *Bodinson Manufacturing Co. v. California Employment Commission* (1941) 17 Cal.2d 321, 325. We review the trial court's construction of the statute de novo. *Upland Police Officers Association v. City of Upland* (2003) 111 Cal.App.4th 1294, 1301.

## Analysis

### 1. Appellant Fails To Establish a Viable Claim of Ineffective Assistance of Counsel.

In a challenge such as this, there exists a presumption that the challenged action is a sound trial strategy under the circumstances. *People v. Karis* (1988) 46 Cal.3d 612, 656. Moore offers no viable argument, and points to nothing in the record to overcome that presumption. Courts reverse convictions on claims of ineffective assistance of counsel only when the record demonstrates that there could have been no rational basis for the tactical choice made by trial counsel. *People v. Mitchum* (1992) 1 Cal.4th 1027, 1045.

Counsel in this case did not challenge the alleged *Miranda* violation, because there was none. Nothing in this record indicates that Moore was under arrest while he was questioned

---

[2] In the minutes, the clerk noted an arithmetic error in the probation order. The correct total for the fines and fees imposed by the trial court should have been $1,026.25.

3

by Deputy Grotke. Nothing in this record would take this encounter on the back deck of the home beyond a temporary detention of reasonable duration to perform an initial investigation of the allegations reported to the officer by the victim. The officer's subjective intent at the time of questioning is completely irrelevant to the determination of whether Moore was detained or under arrest during his questioning. *Maryland v. Macon* (1985) 472 U.S. 463, 470-471.

The failure of defense counsel to call an expert to refute the officer's conclusions about Moore being under the influence is questionable, but understandable. Nothing in this record indicates any alternative explanation for the objective symptoms observed by Deputy Grotke: Pulse rate of 112 beats per minute; horizontal gaze nystagmus early onset; constricted pupils and time-based failure of the Romberg test. *See People v. Gregg* (1968) 267 Cal.App.2d 567, 569 (re objective indicators of being under the influence). Absent evidence of such an alternative explanation in the record, Moore fails to meet the "reasonably probable more favorable result" standard required, even granting for the sake of argument, the assertion that there was no rational tactical reason at work in the decision.

Moore's ineffective assistance of counsel challenge to his conviction lacks merit and is, therefore, denied.

### 2. The Court Erred in Imposing Penalty Assessments Against the Criminal Lab Fee and in Failing to Impose the Drug Program Fee.

Health and Safety Code sections 11372.5 and 11372.7 each require the court to impose specified fees on defendants convicted of certain specified drug offenses. Each such fee is to be collected by the local county and used under Section 11372.5(b) to offset the administrative costs of laboratory testing of suspected drug samples; and under Section 11372.7(c) to fund local drug abuse treatment and prevention programs.[3]

A split of authority has developed around whether a trial court is required to levy penalty assessments and surcharges on these two fees, pursuant to Penal Code sections 1463, and 1464. In *People v. Sierra* (1995) 37 Cal.App.4th 1690, the Fifth District Court of Appeal

---

[3] Nothing in the record explains why the trial court failed to impose the required drug program fee in this case.

4

ruled that penalty assessments should be applied to these two fees, because (a) each section describes the fee alternatively as a fine and a fee; and (b) because each section requires the trial court "increase the total fine, … to include this increment, which shall be in addition to any other penalty prescribed by law." The court concluded that the interchangeable use of the terms fee and fine, coupled with the "any other penalty" language signaled that the drug lab and drug program fees were penal in nature, and therefore subject to the penalty assessments. *Id.* at 1695.[4]

The Second District Court of Appeal Division Seven disagreed in *People v. Vega* (2005) 130 Cal.App.4th 183. The court initially noted that the Legislature's choice of the word "fee" or "fine" was not determinative as to whether the drug lab and drug program fees were intended as "punishment." *Id.* at 195. The court concluded that the obvious legislative purpose of these two fees was to offset administrative costs (some might call them unfunded mandates) imposed on local jurisdictions, not to punish the convicted defendants. *Id.* at 195. The court concluded that, because the fees were not punitive in nature, it would be improper to levy penalty assessments, which are effectively taxes statutorily levied against "fines and forfeitures" imposed on convicted defendants as an element of their punishment.

Our Third District Court of Appeal has not expressly ruled on this split of authority in a published decision, because, as far as we can tell, the split of authority has never been argued before that court. Although that court has applied *Sierra* without any analysis (*People v. Taylor* (2004) 118 Cal.App.4th 454, 460; *People v. Turner* (2002) 96 Cal.App.4th 1409, 1416) prior to the ruling in *Vega*, they have since noted this split of authority (albeit in an unpublished decision) and expressly declined to address the split of authority that none of the litigants had argued in their appeal (*People v. Williams* 2009 WL3340061 (Case C06291) 10/19/2009 at page 3).[5]

---

[4] Other jurisdictions have followed *Sierra* without analysis. *People v. Martinez* (1998) 65 Cal.App.4th 1511, 1522 (Second District Division Five).

[5] *Turner* and *Taylor* both predate the *Vega* decision. Therefore, the court's reference to the *Vega/Sierra* split of authority in the 2009 unpublished *Williams* case has more than passing significance.

The State Controller periodically sends a manual to the courts to give direction in the imposition of fines, fees, penalty assessments and surcharges. That manual cites *Sierra* as controlling authority for the proposition that penalty assessments should be levied against the drug lab and drug program fees. Curiously, the State Controller fails to acknowledge the contrary *Vega* authority. (Manual of Accounting and Audit Guidelines for Trial Courts, Appendix C at page C-4, Published 6/28/10). Therefore, the State Controller's manual is of little value in deciding this issue, and is in fact misleading to the trial court administrators who rely upon it.

Penal Code section 1464 directs that penalty assessments be levied on "every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses … ." That language sent the *Sierra* and *Vega* courts on their respective missions to decide whether the drug lab fees and drug program fees were somehow punitive, or rather an administrative reimbursement. Respectfully to those courts, we conclude that mission amounted to a fool's errand. The language used by the Legislature on that topic in this series of code sections at work in fine and fee calculations is, to be polite, too imprecise to permit any reasonable conclusion on that subject to be drawn.[6]

The court in *Sierra* buttressed its conclusion to impose penalty assessments against these fees with a misinterpretation of the terms "shall increase the total fine necessary to include this increment" from Sections 11372.5 and 11372.7. The root of the *Sierra* court's error is its confusion of the meaning and temporal significance of the term "total fine" by ignoring its definition on Penal Code section 1463(l).

The term "total fine" is defined as including <u>both</u> the base fine <u>and</u> the penalty assessments levied thereon. Penal Code section 1463(l)[7] In its analysis, the *Sierra* court treats

---

[6] See for example, the "air ambulance fee" of $4.00 added to each Vehicle Code violation, pursuant to Government Code section 76000.10(c)(2). In fact, it is expressly called a "penalty" by the Legislature. But the Legislature then expressly exempts this "penalty" from penalty assessments. Go figure. This example further illustrates the folly of the inquiry followed by the *Sierra* and *Vega* courts in their attempts to make sense of this statutory scheme in terms of what is, or is not punishment.

[7] Penal Code section 1463(l) provides: "Total fine or forfeiture" means the total sum to be collected upon a conviction, or the total amount of bail forfeited or deposited as cash bail subject to forfeiture. It may include, but is not limited to, the following components:
    (1) The "base fine" upon which the state penalty assessment and additional county assessment is calculated.
    (2) The "county penalty" required by Section 76000 of the Government Code.

6

"total fine" as synonymous with "base fine," when those two terms are clearly distinct.[8]    It is the "base fine," not the "total fine" that is subjected to penalty assessments.  Penal Code section 1463(l)(1).

The inclusion of these drug lab and drug program fees into the base fine, and then the subsequent improper levy of penalty assessments upon a fee that is not part of the "base fine" upon which such penalty assessments must be calculated according to Section 1463(l)(1) is patent error.  The statutes mandate that these two fees be added to the "total fine," after that figure has been calculated (or if you like taxed up) by adding the appropriate penalty assessments and surcharges to the "base fine."

Accordingly, we conclude that the legislature intended when it drafted Sections 11372.5 and 11372.7 that a trial court should first determine the "base fine" applicable to the offense(s), then levy the proper penalty assessments, surcharges, etc., on that base fine as specified in Sections 1463(l) and 1464 to determine the "total fine," and then increase that "total fine" sum by the increment of any fees imposed under sections 11362.5 and 11362.7,[9] to arrive at the ultimate fine imposed on a convicted drug offender.

---

(3)  The "DNA penalty" required by Sections 76104.6 and 76104.7 of the Government Code.

(4)  The "emergency medical services penalty" authorized by Section 76000.5 of the Government Code.

(5)  The "service charge" permitted by Section 853.7 of the Penal Code and Section 40508.5 of the Vehicle Code.

(6)  The "special penalty" dictated for blood alcohol analysis, alcohol program services, traumatic brain injury research, and similar purposes.

(7)  The "state penalty" required by Section 1464.

[8] Penal Code section 1463(l) was part of the original adoption of Section 1463 in 1991.  It is therefore hard to explain how the court in *Sierra* missed such an obvious defined term a mere four years after its adoption.  The willingness to overlook this patent analytical error in the rush to impose what amount to secret taxes is symptomatic of the complicity of the judiciary with the Legislature's attempt to find revenue from within the pockets of convicted criminals and traffic offenders with an endless litany of "fees," surcharges, and assessments. The absence of any lobbying group to question this approach, and the overall lack of sympathy for those who violate the laws makes fines, fees, surcharges, penalty assessments, emergency fees, etc., an attractive subterfuge for legislators to avoid the hard choices of painful program cuts and equally painful taxation.  The judiciary is expected by the citizens to have the courage to check these dubious practices when appropriate, not to willingly facilitate this subterfuge, even though such funds, if collected, might benefit the courts or some of the programs that serve the courts' interests.

[9] The ultimate fine imposed would also include the restitution fund fine under Penal Code section 1202.4(b), the court operations assessment under Penal Code section 1465.8, the court facilities assessment under Government Code section 70373.  Each of these fines and assessments are excluded by statute from the base fine and not subject to levy of penalty assessments.  See Penal Code section 1464(a)(3), Penal Code section 1465.8(b), and Government Code section 30373(b).

7

Consequently, the trial court erred in this case when it followed the *Sierra* authority and levied penalty assessments against the drug lab fee imposed on Moore in this case. The court further erred when it failed to consider imposing the drug program fee under Section 11372.7.[10]

### 3. The Trial Court Erred By Imposing a Restitution Fund Fine on Each Count.

On the record and in the probation order, the trial court imposed a $150.00 restitution fund fine on each of the two misdemeanor counts of which Moore was convicted. That was also error. Unlike the court operations assessment under Penal Code section 1465.8, which is imposed on each count, the restitution fund fine under Penal Code section 1202.4(b) is imposed only once in each case. *People v. Schoeb* (2005) 132 Cal.App.4th 861, 865. Consequently, the trial court erred when it imposed two separate $150.00 restitution fund fines.

### Conclusion

For the reasons stated herein, the jury's conviction of Moore is affirmed. The trial court's order levying penalty assessments against the drug lab fee and imposing a second restitution fund fine is reversed. The case is remanded to the trial court with directions to delete the penalty assessments imposed against the drug lab fee and the second restitution fund fine, and to consider imposition of the drug program fee. In all other respects, the judgment is affirmed.

DATED: May ___, 2015

_____
ROBERT L. TAMIETTI
Presiding Judge of the Appellate Division

We concur:

---

[10] The drug program fee requires the trial court to make an "ability to pay" determination when it considers imposition of this fee. Section 11372.7(b). The record is silent with respect to any such determination in this case.

8

DATED:  May \_\_\_, 2015

THOMAS M. ANDERSON
Judge of the Appellate Division

DATED:  May \_\_\_, 2015

B. SCOTT THOMSEN
Judge of the Appellate Division

Appeal from the Superior Court, The Honorable Linda J. Sloven

For Appellant: Susan K. Amato, Esq.

For Respondent: District Attorney Clifford H. Newell, Esq., Deputy District Attorney Tiffany Dix, Esq.

Per CRC 8.887(c)(2)(B), This opinion has been certified for publication in the Official Reports.  It is being sent to assist the Court of Appeal in deciding whether to order the case transferred to the court on the court's own motion under rules 8.1000 – 9.1018.