Filed 9/22/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>     v.<br><br>JULIO DAVID MARTINEZ III,<br><br>   Defendant and Appellant. | G052640<br><br>(Super. Ct. No. 13NF0623)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gassia Apkarian, Judge. Affirmed in part; Reversed in part.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

Julio David Martinez III, was convicted of possessing and transporting a controlled substance. (Health & Saf. Code, §§ 11378, 11379.)[1] In addition to three years of supervised probation, the trial court ordered Martinez to pay two mandatory fees—a $50 crime-lab fee (§ 11372.5) and a $150 drug program fee (§ 11372.7). The court concluded both these "fees" were actually "fines" subject to additional assessments, penalties, and a surcharge (collectively referred to as penalty assessments). (*People v. Sharret* (2011) 191 Cal.App.4th 859, 863 (*Sharret*) [lists examples of penalty assessments].) On appeal, Martinez maintains statutory fees were not penal in nature and, therefore, not subject to penalty assessments.[2]

There is a split of authority in the appellate courts on this issue. (See *People v. Webb* (2017) 13 Cal.App.5th 486, 496, 498-499 (*Webb*) [penalty not permitted for § 11372.5 and § 11372.7 fees]; *Watts, supra*, 2 Cal.App.5th at p. 234 [penalty not permitted for § 11372.5]; *People v. Martinez* (1998) 65 Cal.App.4th 1511, 1520-1522 (*Martinez*) [penalty required for § 11372.5]; *People v. Sierra* (1995) 37 Cal.App.4th 1690, 1695 (*Sierra*) [penalty required for § 11372.7].) Almost all California appellate districts, except this court, have weighed in on the topic (albeit in unpublished opinions). As noted by the *Webb* court, the conflict will likely require resolution by our Supreme Court and, in the meantime, we agree with the reasoning of *Watts* and *Webb*. Accordingly, we remand for recalculation of the criminal laboratory analysis and drug program fees on each count without the addition of penalty assessments. The judgment is affirmed in all other respects.

---

[1] All further statutory references are to the Health and Safety Code, unless otherwise indicated.

[2] Martinez's opening brief asserted the $150 drug program fee (§ 11372.7) was not subject to penalty assessments. He filed a supplemental opening brief expanding his argument to include the $50 crime-lab fee (§ 11372.5) as well as the $150 drug program fee (§ 11372.7), following the First District, Division One's recent publication of *People v. Watts* (2016) 2 Cal.App.5th 223 (*Watts*).

FACTS

We need not provide a detailed summary of the underlying facts because Martinez does not dispute the sufficiency of the evidence to support his convictions for possessing and transporting a controlled substance.

What is relevant to the issues raised on appeal is that the trial court suspended imposition of Martinez's sentence and placed him on probation. At the sentencing hearing, the court orally imposed a single $50 crime-lab fee (§ 11372.5) and a single $150 drug program fee (§ 11372.7). It did not mention imposing a fee for each drug conviction, however, the minute order and probation terms and conditions form (Probation Form) reflected these fees would be imposed for each conviction and indicated all fees were subject to penalty assessments.

## DISCUSSION

Martinez claims the penalty assessments added to the $50 crime-lab fee (§ 11372.5) and the $150 drug program fee (§ 11372.7) were unauthorized. He is correct.

The *Watts* court observed the categories of monetary charges a trial court may impose on a criminal defendant "are ill-defined." (*Watts, supra,* 2 Cal.App.5th at p. 227.) "As one justice aptly observed in 2009, the Legislature has created an 'increasingly complex system of fines, fees, and penalties,' leaving it 'doubtful that criminal trial lawyers and trial court judges have the ability to keep track of the myriad [] charges that now attach to criminal convictions.' [Citation.] This justice correctly predicted that '[t]he system, as it exists, is likely to only become more complicated in the immediate future.' [Citations.] Making sense of the system is particularly difficult because the Legislature has described criminal monetary charges with a variety of terms, such as fine, fee, assessment, increment, and penalty, while sometimes assigning different meanings to the same term." (*Id.* at pp. 227-228.)

The court in *Watts* determined there were three categories of money charges. First, there are charges "often referred to as base fines" designed to "punish the

3

defendant for the crime." (*Watts, supra,* 2 Cal.App.5th at p. 228.) "Trial courts often have discretion over whether and in what amount to impose base fines." (*Ibid.*)

Second, there are charges, usually referred to as "fees" imposed to "cover a particular governmental program or administrative cost." (*Watts, supra,* 2 Cal.App.5th at p. 228.) "[A]s with base fines, trial courts often have discretion over whether to impose them." (*Ibid.*)

Third, there are "penalty assessments, which, when applicable, inflate the total sum imposed on the defendant by increasing certain charges by percentage increments. All current penalty assessments are legislatively expressed as a certain dollar amount 'for every ten dollars ($10), or part of ($10),' for the particular fine, penalty, or forfeiture that is subject to the assessments. (Pen. Code, § 1464, subd. (a)(1).)" (*Watts, supra,* 2 Cal.App.5th at p. 228.) "Although these 'parasitic' assessments punish a defendant in the sense that they increase the total monetary charge imposed, they were created in large part to generate revenue and are deposited into various state and county funds. [Citations.]" (*Id.* at p. 229.) The *Watts* court calculated defendant's $50 fine would be subject to a 310 percent increase due to seven applicable penalty assessments.

In light of these three categories, the *Watts* court next analyzed section 11372.5 to determine in which group it belonged. (*Watts, supra,* 2 Cal.App.5th at p. 231.) It began by examining the statutory language, which provided defendants convicted of certain enumerated crimes were required to "pay a criminal *laboratory analysis fee* in the amount of fifty dollars ($50) for each separate offense. The court shall increase the total fine necessary *to include this increment*. [¶] With respect to those offenses specified in this subdivision for which a fine is not authorized by other provisions of law, the court shall, upon conviction, *impose a fine* in an amount not to exceed fifty dollars ($50), which shall constitute the increment prescribed by this section and which shall be in addition to any other penalty prescribed by law." (§ 11372.5, subd. (a), italics added.)

4

The *Watts* court recognized there was an "internal inconsistency" within the statute. (*Watts, supra,* 2 Cal.App.5th at p. 231.) The statute's title and first sentence characterize the charge as a "criminal laboratory analysis *fee*." (§ 11372.5, subd. (a), italics added.) Moreover, if a defendant's offense includes its own penalty fine, the court should add to it a $50 "increment." However, the second paragraph, states that in the event a defendant's offense does not include its own fine the $50 should be considered *a fine*. (§ 11372.5, subd. (a); *Watts, supra,* 2 Cal.App.5th at p. 232.)

The court in *Watts* stated, "For reasons we shall discuss, we conclude that the most sensible interpretation is that the Legislature intended the crime-lab fee to be exactly what it called it in the first paragraph, a fee, and not a fine, penalty, or forfeiture subject to penalty assessments." (*Watts, supra,* 2 Cal.App.5th at p. 231.) It noted the other published appellate court opinions holding the $50 lab fee is a fine failed to recognize the inconsistency between the first two paragraphs of the statute, or did not fully appreciate the statute describes itself as both a fee and a fine. (*Ibid.,* citing *Martinez, supra,* 65 Cal.App.4th at p. 1522; *Sierra, supra*, 37 Cal.App.4th at p. 1693.)

The *Watts* court noted the inconsistency was recognized more recently by the Appellate Division of the Nevada County Superior Court in *People v. Moore* (2015) 236 Cal.App.4th Supp.10 (*Moore*).[3] (*Watts, supra,* 2 Cal.App.5th at p. 232.) The appellate division rejected the reasoning of *Sierra* and *Martinez,* and held that the crime-lab fee was not subject to penalty assessments. (*Moore, supra,* 236 Cal.App.4th Supp. at pp. 15-19 & fn. 4.) The *Watts* court noted, "*Moore* pointed out the Second District Court of Appeal had concluded in *People v. Vega* (2005) 130 Cal.App.4th 183 (*Vega*) that the crime-lab fee was not "punishment" under Penal Code section 182, subdivision (a)

---

[3]        After the appellate division published its opinion, the Third District appellate court transferred the matter, on its own motion, for review and reversed the appellate division's decision. (*People v. Moore* (2017) 12 Cal.App.5th 558, 561.) Our reference to the appellate department's decision is merely to give context to the analysis in the *Watts* case (rejecting the reasons offered in the appellate division's decision).

because it is an administrative fee, not a fine, and therefore cannot be imposed on defendants convicted of a conspiracy to commit one of the crimes listed in section 11372.5. [Citations.] *Moore* criticized *Sierra's* focus on the phrase '"fine, penalty, or forfeiture"' in the statutory language governing assessments, which 'sent the *Sierra . . . court[]* on [its] . . . mission[ ] to decide whether the . . . drug program fee[ ] [was] somehow punitive, or rather an administrative reimbursement.' [Citation.] *Moore* believed that mission 'amounted to a fool's errand' because of the imprecision of the language used to characterize various fines and fees in the relevant statutes. [Citation.]" (*Watts, supra,* 2 Cal.App.5th at pp. 232-233, fn. omitted.)

Ultimately, the *Watts* court disagreed with the *Moore* court's reasons for treating section 11372.5, subdivision (a) as a fee and not a fine. (*Watts, supra,* 2 Cal.App.5th at p. 233.) It also disagreed with "the rationale of *Martinez*, *Sierra,* [and] the courts that have followed them, under which section 11372.5[, subdivision] (a)'s references to the phrases 'total fine,' 'fine,' and 'any other penalty' somehow establish that the crime-lab fee constitutes a 'fine' or 'penalty' within the meaning of the statutes governing penalty assessments. As to the statute's reference to 'total fine,' we fail to perceive how the fact that the crime-lab fee increases the 'total fine' necessarily means the fee is itself a 'fine' subject to penalty assessments. Nothing about the statute's use of the phrase 'total fine' is inconsistent with the conclusion that the crime-lab fee simply gets added to the overall charge imposed on the defendant after penalty assessments are calculated. And as to the statute's references to the word 'fine' and the phrase 'any other penalty,' they appear only in section 11327.5[, subdivision] (a)'s second paragraph, which applies only to offenses 'for which a fine is not authorized by other provisions of law.' As we explain below, since there are currently no such offenses covered by section 11372.5, in our view the language in the second paragraph does not control over the language in the first paragraph, which currently applies to all covered offenses." (*Watts, supra,* 2 Cal.App.5th at p. 234.)

6

Next, the *Watt* court discussed how the statute's "legislative evolution bolsters the conclusion that the Legislature's characterization of the crime-lab fee as a 'criminal laboratory analysis fee' reflects an intent to treat the charge as an administrative fee not subject to penalty assessments in circumstances that are not governed by the second paragraph of subdivision (a). When section 11372.5 was originally enacted in 1980, it required every person convicted of an enumerated offense to, 'as part of any *fine* imposed, pay an *increment* in the amount of fifty dollars ($50) for each separate offense.' [Citation.] This portion of the statute was later amended to require every person convicted of a covered offense to 'pay a criminal laboratory analysis fee in the amount of fifty dollars ($50) for each separate offense.' [Citation.] The elimination of the reference to the fee[] being part of the 'fine imposed' and its renaming from an 'increment' to a 'fee' strongly suggest that the Legislature did not intend the fee to be a 'fine, penalty, or forfeiture' because section 11372.5 calls it something else." (*Watts, supra,* 2 Cal.App.5th at p. 234.)

In addition, the *Watts* court discussed that even if the word "fee" was not determinative, the charge "cannot be fairly characterized as fitting into any of the categories of monetary charges subject to penalty assessments." (*Watts, supra,* 2 Cal.App.5th at p. 234.) The charge is not a forfeiture or related to punishment. Rather, it "is a fixed charge that is 'imposed to defray administrative costs,' not 'for retribution and deterrence.' [Citations.]" (*Id.* at p. 235.) The court found relevant that the charge was a small sum (in the context of the amount of money typically involved in drug trafficking) intended to offset the necessary administrative costs of testing drugs to help secure defendant's conviction. (*Ibid.*) Moreover, the charge is a flat amount that did not change depending on the seriousness of the crime, and the proceeds must be deposited in a laboratory fund maintained by each county's treasurer. (*Ibid.*) It concluded, "the fee is by its nature not punishment and therefore not a 'fine' or 'penalty' except in

7

circumstances in which the second paragraph of section 11372.5[, subdivision] (a) may apply." (*Ibid.*)

The *Watts* court then turned its attention to deciphering the meaning and purpose of the statute's second paragraph. (*Watts, supra,* 2 Cal.App.5th at p. 235.) "Being unconvinced by the rationale of other authorities that have failed to grapple with the different language used in section 11372.5[, subdivision] (a)'s two paragraphs, we turn to consider how the second paragraph should be interpreted. As we have said, the second paragraph establishes that in the case of an offense 'for which a fine is not authorized by other provisions of law,' the crime-lab fee acts as a fine and is, in turn, subject to penalty assessments. The most reasonable interpretation of the phrase 'not authorized by other provisions of law' is that it refers to offenses for which no separate fine is *permitted* to be imposed. [Citation.] Under this interpretation, the second paragraph does not apply to Watts's offense. Although '[m]any criminal statutes provide for the imposition of a base fine in addition to a jail or prison sentence . . . [w]here the criminal statute does not prescribe [such a] fine, [Penal Code] section 672 authorizes the trial court to impose a fine.' [Citation.] . . . Here, although the statute under which Watts was convicted, section 11378, does not provide for a base fine, the offense is punishable by imprisonment in county jail [citations] and is thus subject to a fine under Penal Code section 672." (*Id.* at pp. 235-236.)

The *Watts* court discovered there was a significant problem with the second paragraph of section 11375.5. "Although we believe that it makes the most sense to interpret the second paragraph of section 11372.5[, subdivision] (a) to apply only to offenses for which no separate fine is permitted to be imposed, we recognize that there are presently no such offenses subject to the crime-lab fee. In other words, the second paragraph of section 11372.5[, subdivision] (a) has no current application and, in that sense, is surplusage. 'It is a maxim of statutory interpretation that courts should give meaning to every word of a statute and should avoid constructions that would render any

8

word or provision surplusage,' and '"[a]n interpretation that renders statutory language a nullity is obviously to be avoided."' [Citation.] Section 11372.5[, subdivision] (a) lists 29 offenses that are subject to the crime-lab fee. Of them, two no longer exist [citations]; three are subject to a fine under the criminalizing statute itself [citations]; eight are subject to a fine of up to $20,000 under section 11372, subdivision (a) [citations]; and the remaining 16 are punishable by confinement in either prison or county jail and are therefore subject to a fine under Penal Code section 672. [Citations.] Thus, the second paragraph of section 11372.5[, subdivision] (a) apparently describes a null set." (*Watts, supra,* 2 Cal.App.5th at p. 236.)

The *Watts* court explained, "We have been unable to trace the root of this interpretive difficulty to amendments either to section 11372.5 or to the laws governing other fines." (*Watts, supra,* 2 Cal.App.5th at p. 237.) It stated a similar second paragraph was included in the original version of the statute, which at the time covered 17 offenses. (*Ibid.*) It discovered a separate base fine was permitted for those 17 offenses at the time, rendering the second paragraph surplusage. (*Ibid.*) The *Watts* court examined the legislative history, was unable "to trace the reason for the inclusion of the second paragraph of section 11372.5[, subdivision] (a)." (*Ibid.*)

In light of the above, the court concluded, "Ultimately, the rule against surplusage 'is not absolute' and 'will be applied only if it results in a *reasonable* reading of the legislation.' [Citation.] Giving the second paragraph's words their ordinary meaning, we conclude that Watts's offense, like all the others presently covered by section 11372.5, is not one 'for which a fine is not authorized by other provisions of law.' As a result, the first paragraph's characterization of the crime-lab fee as a fee is controlling, and penalty assessments should not have been imposed on it." (*Watts, supra* 2 Cal.App.5th at p. 237, fn. omitted.)

We consider the well-reasoned and in-depth analysis of the *Watts* opinion to be highly persuasive. The First District, Division Three, was similarly swayed, and

recently published *Webb, supra,* 13 Cal.App.5th 486. It agreed any attempt to resolve the issue based on the plain language of the statute was "'a fool's errand,'" and it was waiting for clarification from our Supreme Court. (*Id.* at p. 497.) We agree the Legislature's imprecise and inconsistent use of the terms "fee," "fine," and "penalty" is highly problematic.

We found instructive the *Webb* court's additional analysis, categorizing sections 11372.5 and 11372.7 as administrative fees due to "the purpose for which the charge is imposed" given the lack of "clear statutory language to the contrary." (*Webb, supra,* 13 Cal.App.5th at p. 497.) The *Webb* court concluded the purpose for a charge could be decided by evaluating several factors. It gave as an example the Supreme Court's decision in *People v. Alford* (2007) 42 Cal.4th 749 (*Alford*). "[That opinion] held that the court security fee ([Pen. Code,] § 1465.8) is not punitive, in part because it had a rational connection to a nonpunitive purpose and because the amount of the fee is not dependent on the seriousness of the criminal offense. The court reasoned that the purpose of the fee 'was not to punish but to ensure adequate funding for court security.' [Citation.]" (*Webb, supra,* 13 Cal.App.5th at p. 497, fn. omitted.) "Importantly, unlike penalty assessments which also generate funds for court services, the court security fee is a relatively small flat fee and not a percentage of the total fine imposed on a defendant. [Citation.] ['[P]enalty assessment set forth in [Penal Code] section 1464[] is a "garden variety" fine calculated on the size and severity of the base fine imposed.'].)

The *Webb* court agreed with the *Watts* court that the $50 lab fee primarily served an administrative function. (*Webb, supra,* 13 Cal.App.5th at p. 496.) "[S]ection 11372.5, subdivision (b) expressly provides in part that 'The county treasurer shall maintain a criminalistics laboratories fund' into which the criminal laboratory analysis fee shall be deposited and that the 'county may retain an amount of this money equal to its administrative cost incurred pursuant to this section. Moneys in the criminalistics laboratories fund shall, except as otherwise provided in this section, be used exclusively

10

to fund (1) costs incurred by criminalistics laboratories providing microscopic and chemical analyses for controlled substances, in connection with criminal investigations . . . , (2) the purchase and maintenance of equipment for use by these laboratories in performing the analyses, and (3) for continuing education, training, and scientific development of forensic scientists regularly employed by these laboratories.'" (*Id.* at p. 498.)

The *Webb* court reached the same conclusion regarding the $150 drug program fee, which as in our case, was challenged by the defendant. "[S]ection 11372.7, subdivision (c) directs that funds collected in connection with the drug program fee be deposited into a drug program fund which 'shall be allocated by the administrator of the county's drug program to drug abuse programs in the schools and the community, subject to the approval of the board of supervisors.' Funding community drug abuse prevention programs is a nonpunitive, administrative purpose. [¶] As in *Alford*, neither of the fees is tethered to the seriousness of defendant's criminal conduct. The criminal laboratory analysis fee is a fixed $50. The drug program fee may not exceed $150 and the sliding scale is based not on severity of the offense but on the defendant's ability to pay. Neither fee is sufficiently great to serve as a deterrent. (See *Alford, supra*, 42 Cal.4th at p. 759 ['It is inconceivable that defendant would have decided not to commit his crime had he known in advance that this $20 fee would be imposed'].) [¶] Because the criminal laboratory analysis fee and drug program fee are nonpunitive, the trial court erred by imposing penalty assessments on those fees." (*Webb, supra,* 13 Cal.App.5th at pp. 498-499, fn. omitted.)

We adopt the legal analysis in the *Watts* and *Webb* decisions. Martinez's $50 crime-lab fee (§ 11372.5) and a $150 drug program fee (§ 11372.7) were not subject to penalty assessments. The matter must be remanded for recalculation of the crime lab and drug programs fees without the penalty assessments.

11

The last issue we must decide is whether the two fees must be imposed two times because Martinez sustained two convictions. We reject Martinez's assertion the trial court must stay the fees on his possession for sale conviction (count 1) pursuant to Penal Code section 654. As correctly stated by the Attorney General in her supplemental briefing, this section applies to punishment, not administrative fees. (See *Sharret, supra,* 191 Cal.App.4th at p. 865 [Penal Code "section 654 applies to stay an imposed criminal laboratory analysis fee only if it is punitive in nature"].)

To the extent Martinez is asserting his entire sentence on count 1 (including fines and fees) should have been stayed pursuant to Penal Code section 654, we conclude the claim is not ripe for adjudication. The court suspended imposition of the entire sentence and granted Martinez probation as to each offense. The court can consider any double punishment concerns in the event Martinez violates his probation. (See *People v. Wittig* (1984) 158 Cal.App.3d 124, 137.)

At the hearing, the court imposed only one crime-lab fee (§ 11372.5) and one drug program fee (§ 11372.7), and did not mention imposing each of these fees per conviction. However, the minute order and the Probation Form indicated the fees would be imposed for each conviction. The Attorney General acknowledged that generally only the oral pronouncement constitutes the judgment, and any divergence in the minute order (or other forms) is presumed to be clerical error. (*People v. Scott* (2012) 203 Cal.App.4th 1303, 1324.) This case presents an exception to this general rule because the crime-lab fee and drug program fee were each mandatory. The drug program fee provides the defendant "shall pay a drug program fee . . . for each separate offense." (§ 11372.7.) Similarly, the crime-lab fee mandates the defendant "shall pay a . . . fee . . . for each separate offense."

Here, Martinez sustained two convictions and each required imposition of two different administrative fees mandated by sections 11372.5 and 11372.7. Therefore, it appears the minute order and Probation Form were correct in indicating fees would be

12

imposed for each conviction. The court lacked authority to either stay imposition of a fee or fail to impose a fee mandated by law.[4] (See *People v. Woods* (2010) 191 Cal.App.4th 269, 272-273 [set aside stay of operations assessment, court security fee, and restitution fine], quoting from *People v. Cattaneo* (1990) 217 Cal.App.3d 1577, 1589 [set aside stay of five-year drug enhancement].) The sentence orally pronounced was illegal, and thus unauthorized, and must be set aside.

## DISPOSITION

We remand for recalculation of the criminal laboratory analysis and drug program fees on each count without the addition of penalty assessments. Although not raised at the first sentencing hearing, Martinez may ask if necessary for the court to determine if he has the ability to pay the $150 fee two times as provided for in section 11372.7, subdivision (b). The judgment is affirmed in all other respects.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


FYBEL, J.

---

[4] The exception being the situation where the court determined defendant lacked the ability to pay the $150 fee as permitted by section 11372.7, subdivision (b). There is not a similar provision regarding the $50 fee in section 11372.5.

13