Filed 3/22/16  P. v. Kilpatrick CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SEAN-PAUL KILPATRICK,<br><br>Defendant and Appellant. | H042054<br>(Monterey County<br>Super. Ct. Nos. SS102530A,<br>SS092383A) |

Defendant Sean-Paul Kilpatrick pleaded no contest to a count of possession of hydrocodone for sale (Health & Saf. Code, § 11351) and possession of a controlled substance for sale (*id*., § 11378) in two consolidated cases.  He was sentenced to a term of six years in county jail.  On appeal, defendant argues that his trial counsel rendered ineffective assistance when he failed to call a witness to testify during the hearing on his motion to suppress.  He also claims that the trial court erroneously imposed penalty assessments on his criminal laboratory analysis fee and drug program fee.  We reject defendant's arguments and affirm the judgment.

**BACKGROUND**

*Case No. SS102530A*

On January 7, 2011, the Monterey County District Attorney's Office filed an information charging defendant with a count of possession of a controlled substance for sale (Health & Saf. Code, § 11378), a count of possession of marijuana/hashish for sale (*id*., § 11359), a count of transporting a controlled substance (*id*., § 11379, subd. (a)), and

resisting, obstructing, or delaying a police officer (Pen. Code, § 148, subd. (a)(1)).[1]  It was also alleged that defendant had served a prior prison term after he committed a felony while released on bail.  (§§ 667.5, subd. (b), 12022.1.)

*Case No. SS092383A*

The following month, defendant was charged by information in a separate case with a count of possession of hydrocodone for sale (Health & Saf. Code, § 11351), possession of hydrocodone (*id.*, § 11350, subd. (a)), and possession of 28.5 grams or less of marijuana (*id.*, § 11357, subd. (b)).  It was further alleged that he had served two prior prison terms.

*Facts Pertaining to Case No. SS102530A*[2]

On November 8, 2010, a campus supervisor at Pacific Grove High School found a jar of marijuana on campus and went to alert school administration.  Another campus supervisor stayed close to where the jar was found and saw two men approach the area.  The administration had already contacted the police.

The responding officer recognized defendant from a flier that said that he was on parole, was involved in narcotics sales, and was possibly armed.  The officer called for backup, and both men were eventually handcuffed and detained.  Defendant was not compliant and was writhing on the floor during the process.  At some point, officers noticed that defendant had duct tape around his waist.  Concerned that the duct tape was attached to a weapon, the officers pulled on the duct tape and found that it was securing a bag filled with controlled substances.

---

[1] Unspecified statutory references are to the Penal Code.

[2] The facts of case No. SS092383A are not relevant to the issues raised on defendant's appeal.  Therefore, we only provide a brief recitation of the facts pertinent in case No. SS102530A.

*Motion to Suppress*

On May 16, 2013, the court held a hearing on defendant's motion to suppress evidence (§ 1538.5) in case No. SS102530A. Defendant argued that the drugs that were found in his possession, his statements to the arresting officers, and all observations made by the officers during their contact with him at the high school should be suppressed because they were the product of an illegal search. After hearing testimony from the two campus supervisors who found the marijuana, the responding officer, and defendant himself, the court denied the motion to suppress.

Subsequently, case Nos. SS102530A and SS092383A were consolidated.

*Plea and Sentencing*

On October 30, 2014, defendant entered a plea of nolo contendere in case No. SS092383A to possession of hydrocodone for sale and admitted he had served two prior prison terms. He also entered a plea of nolo contendere in case No. SS102530A to possession of a controlled substance for sale. When he entered his plea, defendant waived his right to appeal, except for claims of ineffective assistance of counsel.

On January 6, 2015, the trial court sentenced defendant to the agreed-upon term of six years in county jail for case No. SS092383A and two years in county jail for case No. SS102530A. The two terms were to be served concurrently. The trial court also imposed various fines and fees, including a criminal laboratory analysis fee (Health & Saf. Code, § 11372.5) and a drug program fee (*id*., § 11372.7). The trial court applied penalty assessments (§ 1464, Gov. Code, § 76000) to both of these fees.

Defendant filed a timely notice of appeal. He also requested a certificate of probable cause, which the trial court granted.

**DISCUSSION**

1. *Ineffective Assistance of Counsel*

On appeal, defendant argues that his trial counsel rendered ineffective assistance when he failed to call a police officer to testify during the suppression hearing. Defendant argues that the police officer had previously provided testimony at the preliminary hearing that directly contradicted testimony provided by another officer during the suppression hearing.[3]

Before we proceed to the substantive merits of his claim, we briefly review the preliminary hearing testimony and the testimonies provided during the hearing on the motion to suppress.

a. **Preliminary Hearing Testimony**

Officer DiMarco testified at the preliminary hearing. He was dispatched to Pacific Grove High School after receiving reports of a trespasser on school grounds. When he arrived, he saw four officers at the scene detaining two men next to the high school's football field.

Officer DiMarco stated that defendant was not being compliant. He was being handcuffed but was swaying back and forth on the ground while lying on his stomach. Defendant had his legs crossed and would not allow the officers to search him. DiMarco stated that defendant had his legs tight with his ankles crossed and had clenched his buttocks.

Officer DiMarco said that the officers told defendant that he needed to relax and to allow a search. Defendant responded that the officers could not search him.

---

[3] Originally, the People argued that defendant waived his right to appeal as part of his plea, which barred his claim of ineffective assistance of counsel. Prior to oral argument, the People withdrew their waiver argument (Argument I.C. in their respondent's brief).

DiMarco stated, "At that point, Sergeant Figueora instructed me that he believed that [defendant] might have a weapon. And at that time, he forcibly spread [defendant's] legs and said to search him."

Officer DiMarco stated that when the officers lifted up defendant's shirt, they noticed a "good amount of duct tape around his waist, going down beneath his pants." DiMarco explained that this was concerning, because defendant may have been using the duct tape to conceal a weapon. At that point, DiMarco tried to remove the duct tape. DiMarco said that he pulled on the tape and the officers lowered defendant's sweat pants so they could ascertain if the tape was securing a weapon. DiMarco asserted that he and his fellow officers then saw that there was a "white crystallized substance between [defendant's] gluteal folds," which he believed was crystal methamphetamine.

Later, Officer DiMarco was asked whether someone pulled off defendant's pants and underwear at the school. DiMarco responded affirmatively and explained that Sergeant Figueroa "lowered [defendant's] pants because we wanted to—he instructed me that he believed that [defendant] might have a weapon on him and to search that area."

b. **Hearing on the Motion to Suppress**

i. *Sergeant Jose Figueroa's Testimony*

Sergeant Jose Figueroa testified at the suppression hearing. Figueroa was the first officer at the scene. He stated that when he initially made contact with defendant and the other man at the campus, they walked away from him. He eventually ordered both of them to get on the ground and called for extra units so he could detain them. Figueroa said that he recognized defendant and knew that he was an active parolee. He had recently seen a flier with defendant's picture on it, describing him as being on parole, being involved in narcotics transactions, and possibly being armed.

Four officers arrived at the scene, including Officer DiMarco. Sergeant Figueroa stated that two officers attempted to put handcuffs on defendant, but defendant was not

5

being compliant with the arrest order. Figueroa said that defendant was writhing on the ground, crossing his legs, and preventing the officers from getting a hold of his wrists.

Sergeant Figueroa told Officer DiMarco to grab defendant's legs and to try to spread them apart so they could get control of defendant's feet. Figueroa said that defendant's sweatpants were loose and had moved down during the struggle with the officers, revealing gray duct tape around his waist. Figueroa testified that he alerted the other officers that he saw duct tape and to thoroughly search defendant for weapons.

Sergeant Figueroa asserted that Officer DiMarco eventually forcefully spread defendant's legs apart, grabbed the duct tape, and pulled on it. The duct tape was securing a plastic bag filled with controlled substances. Figueroa stated that none of the officers took defendant's clothes off.

ii. *Defendant's Testimony*

Defendant testified at the suppression hearing. He stated that Sergeant Figueroa told him he was under arrest for trespassing and that he complied with the officers' requests to get down on the floor.

Defendant said that after Sergeant Figueroa called for backup, one of the arriving officers immediately jumped onto his back while he was lying on his stomach. Defendant said that this officer, Commander Nyuent, immediately searched his front pockets, rolled him onto his back, and ran his palms all over the inside of his clothing. Defendant testified that Nyuent took money out of his pocket and handed it to Figueroa.

Defendant attested that Commander Nyuent continued to search him. Defendant stated that Nyuent rolled him onto his stomach, pulled his sweatpants out so he could look down, and reached down into his pants.

Defendant asserted that he was searched a second time, when Officer DiMarco arrived. He stated that the second time, someone "spread [his] buttocks apart" and pulled the bag out that was secured by duct tape.

6

Defendant said he did not have anything that looked like a weapon on him at the time of the search. He also explained that he had been injured, and the duct tape was there to prevent any bleeding.

### iii. *The Trial Court's Ruling*

After hearing testimony, the trial court denied defendant's motion to suppress, finding that there was probable cause to detain defendant and the entire search was reasonable. The court noted that it found Sergeant Figueroa's testimony describing the events to be more credible than defendant's testimony. It further found that defendant was not subjected to a "strip search of any kind."

### c. **Overview of Ineffective Assistance of Counsel Claims**

Defendant argues that his trial counsel rendered ineffective assistance when he failed to call Officer DiMarco to testify during the hearing on the motion to suppress.

To succeed on a claim of ineffective assistance of counsel, defendant must show both that counsel failed to act in a manner to be expected of a reasonably competent attorney acting as a diligent advocate and that defendant was prejudiced thereby. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216-217; *Strickland v. Washington* (1984) 466 U.S. 668, 684 [discussing federal constitutional rights]; *People v. Pope* (1979) 23 Cal.3d 412, 422 [discussing both state and federal constitutional rights].)

" 'Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ' [Citations.] '[W]e accord great deference to counsel's tactical decisions' [citation], and we have explained that 'courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight' [citation]. 'Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts.' " (*People v. Weaver* (2001) 26 Cal.4th 876, 925-926.)

7

"In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions." (*People v. Weaver*, *supra*, 26 Cal.4th at p. 926.)

We " 'need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.' " (*In re Jackson* (1992) 3 Cal.4th 578, 604, quoting *Strickland v. Washington*, *supra*, 466 U.S. at p. 697.) A defendant establishes prejudice by demonstrating that without the deficient performance there is a reasonable probability the result would have been more favorable. In other words, even if counsel's actions fall below the threshold of reasonableness, a defendant must still show that counsel's actions were prejudicial. (*People v. Ledesma*, *supra*, 43 Cal.3d at p. 218.) A defendant must prove prejudice that is a " 'demonstrable reality,' not simply speculation." (*People v. Williams* (1988) 44 Cal.3d 883, 937; *People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.)

d. **Defendant does not Establish Defense Counsel's Performance was Deficient**

Defendant claims that defense counsel's failure to call Officer DiMarco to testify during the suppression hearing was patently unreasonable, because his testimony directly contradicted Sergeant Figueroa's testimony. However, we do not believe defendant has established that his defense counsel acted deficiently. Accordingly, we reject his claim of ineffective assistance of counsel.

Based on our review of the record, we disagree with defendant's claim that there was a discrepancy between Sergeant Figueroa's testimony and Officer DiMarco's testimony regarding how the search was initiated. During the preliminary hearing,

8

DiMarco said that officers lowered defendant's pants and underpants, because Sergeant Figueroa believed that defendant may be armed. DiMarco asserted that officers subsequently lifted defendant's shirt, which is when they saw the duct tape around defendant's waist.

In contrast, Sergeant Figueroa testified that defendant's pants, which were loose, had lowered during the struggle with officers. Accordingly, Figueroa said that he was able to see the duct tape around defendant's waist, which was when he alerted the other officers that defendant may be armed.

On this point, the two testimonies are not entirely irreconcilable. It is possible that Sergeant Figueroa initially saw the duct tape while defendant was writhing then alerted Officer DiMarco that defendant may have a weapon. At that point, Officer DiMarco may have started his search by lifting defendant's shirt, thus exposing the duct tape to himself and to the other officers.

However, we do agree with defendant that there is an obvious contradiction between Officer DiMarco's statements during the preliminary hearing and the statements made by Sergeant Figueroa during the hearing on the motion to suppress. Figueroa unequivocally stated, in several portions of the hearing, that none of the officers present at the scene took off defendant's clothes. Rather, Figueroa stated that defendant's writhing had caused his pants to ride down, exposing his buttocks. DiMarco, on the other hand, answered affirmatively when asked during the preliminary hearing if any of the officers had taken off defendant's sweat pants and underwear when he was at the school. DiMarco explained that the officers had lowered defendant's sweat pants, because they wanted to see if the duct tape around defendant's waist was secured to a weapon.

Nonetheless, whether or not to call certain witnesses "is . . . a matter of trial tactics, unless the decision results from unreasonable failure to investigate." (*People v. Bolin* (1998) 18 Cal.4th 297, 334.) " 'It is all too tempting for a defendant to second

9

guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." ' " (*In re Jones* (1996) 13 Cal.4th 552, 561.)

In this case, there is no explanation in the record for defense counsel's failure to call Officer DiMarco to testify during the suppression hearing. Accordingly, we will not find counsel rendered ineffective assistance "unless there could be no conceivable reason for counsel's acts or omissions." (*People v. Weaver*, *supra*, 26 Cal.4th at p. 926.)

Defendant argues that there can be no conceivable tactical reason for defense counsel's omissions, because he claims that Officer DiMarco's testimony during the preliminary hearing only lends support to his argument that he was subjected to an unreasonable strip search.

We agree that Officer DiMarco's testimony that defendant's underwear and pants were removed had the potential to benefit defendant during the hearing on the motion to suppress. However, defense counsel may have had a tactical reason for failing to call DiMarco to testify. Much of DiMarco's testimony from the preliminary hearing corroborated Figueroa's testimony at the suppression hearing. Like Figueroa, DiMarco also asserted that defendant was not compliant with the officers and was struggling with them when they were trying to detain them. DiMarco further confirmed that Figueroa

10

told him he believed that defendant may have a weapon, and DiMarco asserted that he followed the duct tape secured around defendant's waist until he found the bag of drugs secured at the end. DiMarco also testified that seeing the duct tape around defendant's waist was concerning because it could be securing a weapon, lending support to the existence of probable cause for the search.

Furthermore, DiMarco's preliminary hearing testimony was far from clear and contained some discrepancies. DiMarco first testified that other officers lowered defendant's pants while he was pulling on the duct tape in order to facilitate the search. Later, he stated that Sergeant Figueroa *himself* lowered defendant's pants and underwear because Figueroa suspected he had a weapon.

DiMarco also did not corroborate defendant's version of the events, as defendant testified he was subjected to an invasive search of his body. Defendant asserted that the officers "spread [his] butt cheeks and just reached in and just started [to] pull the bag out," further describing the search as violent. DiMarco merely testified that he pulled on the duct tape; he did not state that the search became invasive. Calling DiMarco to testify could have undermined defendant's credibility. It is conceivable that trial counsel may have believed that having both officers testify would only serve to discredit defendant's version of the events.

Therefore, even taking into consideration the discrepancy between the testimonies—the contradictory statements regarding whether defendant's pants and underwear were removed—we cannot conclude based on this record that there is no *conceivable* tactical reason for defense counsel's alleged omissions. Claims of ineffective assistance of counsel are generally rejected on direct appeal when " ' "the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." ' " (*People v. Mendoza*

11

*Tello* (1997) 15 Cal.4th 264, 266.) "A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding." (*Id*. at pp. 266-267.)

Accordingly, we conclude that defendant's claim of ineffective assistance of counsel fails, because he has not shown that his counsel acted outside the wide range of professional competence. Based on our conclusion, we need not address his claim that he was prejudiced by his counsel's alleged omissions.

2. *Penalty Assessments on the Criminal Laboratory Analysis Fee and Drug Program Fee*

Next, defendant challenges the imposition of penalty assessments on the criminal laboratory analysis fee imposed under Health and Safety Code section 11372.5, subdivision (a), and the drug program fee imposed under Health and Safety Code section 11372.7, subdivision (a).[4]

Section 1464 and Government Code section 76000 mandate penalties or assessments upon every fine, penalty, or forfeiture imposed by the trial court in a criminal case. Defendant argues that the drug program fee and criminal laboratory analysis fee are *fees*, not fines or penalties, and therefore should not be subject to penalties.

As defendant notes, there is a split of authority regarding whether penalty assessments can validly be imposed on such fees. In *People v. Sierra* (1995) 37 Cal.App.4th 1690 (*Sierra*), the Fifth Appellate District concluded that the drug program fee imposed under Health and Safety Code section 11372.7 was penal in nature and therefore subject to penalty assessments. (*Sierra*, *supra*, at p. 1695.) *Sierra* noted that

---

[4] Defendant and the People agree that these issues are cognizable on appeal notwithstanding defendant's waiver of appellate rights when he entered his plea. A defendant's waiver of his right to appeal does not prevent him from asserting errors not contemplated by the waiver. (*People v. Vargas* (1993) 13 Cal.App.4th 1653, 1663.) The fees and penalty assessments were imposed after defendant entered his waiver. Accordingly, he did not waive his right to contest these issues on appeal.

12

Health and Safety Code section 11372.7, subdivision (a), states: "Except as otherwise provided in subdivision (b) or (e), each person who is convicted of a violation of this chapter shall pay a drug program fee in an amount not to exceed one hundred fifty dollars ($150) for each separate offense. The court shall increase the total fine, if necessary, to include this increment, which shall be in addition to any other penalty prescribed by law." *Sierra* surmised that Health and Safety Code section 11372.7 described the drug program fee as an increase to the "total fine," and a fine that was in addition "to any other penalty," thereby describing itself as both a "fine and/or a penalty." (*Sierra*, *supra*, at p. 1696.)

The statute imposing the drug program fee requirement, Health and Safety Code section 11372.7, contains similar language, describing the fee as an "increment" of "the total fine" which is "in addition to any other penalty prescribed by law." (Health & Saf. Code, § 11372.7, subd. (a).) In *People v. Martinez* (1998) 65 Cal.App.4th 1511, the Second Appellate District extended the reasoning in *Sierra* to conclude that a criminal laboratory analysis fee imposed under Health and Safety Code section 11372.5 was subject to mandatory penalty assessments. (*People v. Martinez*, *supra*, at p. 1522.)

More recently, the Appellate Division of the Nevada County Superior Court decided *People v. Moore* (2015) 236 Cal.App.4th Supp. 10, which disagreed with the rationale set forth in *Sierra* and concluded that penalty assessments are not properly imposed on the criminal laboratory analysis fee or the drug program fee. *Moore* interpreted *People v. Vega* (2005) 130 Cal.App.4th 183 (*Vega*), a case from the Second Appellate District, as disagreeing with the *Sierra* court and concluding that the lab fees and drug program fees were meant to offset administrative costs and were not penal in nature. (*Id.* at p. 195.)

We disagree with the reasoning set forth in *Moore*. First, *Vega* did not address the exact issue presented here: whether penalty assessments can be properly imposed on a

13

criminal laboratory analysis fee or a drug program fee. Rather, *Vega* discussed whether it was proper to impose the fee in the first instance on the defendant in that case. The issue in *Vega* was whether a criminal laboratory analysis fee plus penalty assessments was properly imposed on a defendant who was convicted of conspiracy to transport or possess cocaine. (*Vega*, *supra*, 130 Cal.App.4th at pp. 193-194.) Section 182, which defines and describes the punishment for crimes of conspiracy, states that those convicted "shall be punished in the same manner and to the same extent as is provided for the punishment of that felony." (§ 182, subd. (a).) Whether the criminal laboratory analysis fee could be imposed depended on whether the fee was properly considered a punishment. *Vega* concluded that the fee was *not* a punishment, since it interpreted that the fee was imposed to defray administrative costs, not to deter or make retribution. (*Vega*, *supra*, at p. 195.) Accordingly, *Vega* held that the criminal laboratory analysis fee was improperly imposed on the defendant. (*Ibid.*)

Not all courts have agreed with *Vega*. In *People v. Sharret* (2011) 191 Cal.App.4th 859, another division of the Second Appellate Court, did not analyze *Vega* in its analysis and concluded that "[t]he section 11372.5 criminal laboratory analysis fee constitutes punishment and must be stayed under section 654." (*Id.* at p. 869.)

Additionally, in *People v. Talibdeen* (2002) 27 Cal.4th 1151 (*Talibdeen*), the California Supreme Court considered the related issue of whether a trial court has discretion to waive penalties under section 1464. (*Talibdeen*, *supra*, at p. 1153.) In *Talibdeen*, the trial court "imposed, among other things, a laboratory analysis fee of $50 pursuant to Health and Safety Code section 11372.5, subdivision (a). Although subdivision (a) of . . . section 1464 and subdivision (a) of Government Code section 76000 called for the imposition of state and county penalties based on such a fee, the trial court did not levy these penalties, and the People did not object at sentencing." (*Ibid.*, fn. omitted.) The appellate court imposed the penalties after concluding they were

14

mandatory and not discretionary sentencing choices. Our Supreme Court affirmed the appellate court's judgment, holding that the trial court had no discretion to waive penalties in the matter. (*Id*. at p. 1157.)

We believe the Supreme Court's discussion in *Talibdeen* shows approval for the proposition that penalty assessments should apply to criminal laboratory analysis fees imposed under Health and Safety Code section 11372.5. We also find the reasoning in *Sierra* and *Martinez* to be persuasive and conclude that penalty assessments were also applicable to the drug program fee imposed under Health and Safety Code section 11372.7.[5]

## DISPOSITION

The judgment is affirmed.

---

[5] The People argue that this court previously held that penalty assessments are properly imposed on criminal laboratory analysis fees and drug program fees in *People v. Hamed* (2013) 221 Cal.App.4th 928. *Hamed* listed criminal laboratory analysis fees and drug program fees as examples of fines where courts have imposed penalty assessments. (*Id*. at pp. 935-936.) *Hamed*, however, did not discuss the issue raised here: whether penalty assessments were properly imposed on the drug program fee and the criminal laboratory analysis fee.

_____

Premo, J.

WE CONCUR:


_____

Rushing, P.J.


_____

Márquez, J.


<u>People v. Kilpatrick</u>
H042054