Filed 4/12/18 (unmodified opn. attached)

# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>STARLETTA PARTEE,<br><br>Defendant and Appellant. | B276040<br><br>(Los Angeles County<br>Super. Ct. No. TA138027)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br>[NO CHANGE IN JUDGMENT] |

The opinion filed on March 21, 2018 is modified as follows:

1.  On page 1, include an additional counsel for Plaintiff and Respondent, to read as follows:  "Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Colleen M. Tiedemann and Ilana Herscovitz Reid, Deputy Attorney Generals, for Plaintiff and Respondent."

2. On page 2, lines 7-8, delete "The trial court suspended imposition of sentence and placed defendant on probation for three years" and replace it with "The trial court suspended imposition of sentence and placed defendant on probation for three years on the condition, among others, that she serve 365 days in the county jail"

3. On page 2, line 22, delete "The day after" and replace it with "On the day of"

4. On page 4, lines 24-25, delete "She added she did not testify because "[f]amily is first" and replace it with "She added that when her family members discovered she had spoken with Detective Skaggs, they told her not to testify because "[f]amily is first."

These modifications do not change the judgment.

Defendant's petition for rehearing is DENIED.

_____

KRIEGLER, Acting P.J.                                    DUNNING, J.

2

Filed 3/21/18 (unmodified version)

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B276040 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA138027) |
| v. | |
| STARLETTA PARTEE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Allen Webster, Jr., Judge. Affirmed.

Law Office of Paul Kleven, Paul Kleven, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and Colleen M. Tiedemann, Deputy Attorney General, for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts V and VI.

# INTRODUCTION

Despite a grant of immunity, defendant and appellant Starletta Partee refused to testify against four individuals charged with a gang-related murder. A jury convicted her of four felony counts of being an accessory after the fact (Pen. Code, § 32)[1] and one count of misdemeanor contempt for refusing to testify (§ 166, subd. (a)(6)).[2] The trial court suspended imposition of sentence and placed defendant on probation for three years.

Defendant raises several arguments on appeal: the prosecution overreached when it charged her as an accessory for refusing to testify, she cannot be guilty of being an accessory because her silence—refusing to testify—is not an affirmative act, her single act of refusing to testify does not support four felony convictions, the trial court failed to instruct on the elements of contempt, her statements to a detective were admitted into evidence in violation of her Fifth Amendment rights, and her trial counsel was ineffective for failing to raise the Fifth Amendment claim. We find no grounds for reversal and affirm the judgment.

# FACTUAL BACKGROUND

The day after a 2006 gang-related murder, City of Los Angeles police officers found the car they believed the perpetrators drove and then abandoned. The homicide detective, John Skaggs, learned the car had been rented by defendant and

---

[1]     All statutory references are to the Penal Code.

[2]     The jury found allegations that the crimes were committed for the benefit of a criminal street gang were not true. (§ 186.22, subds. (b)(1).)

2

that she had contacted the rental car office to report it as stolen. The rental car representative told defendant to file a report with the Hawthorne Police Department. Meanwhile, Detective Skaggs contacted the Hawthorne Police Department and asked to be notified when defendant arrived. Officers from the Los Angeles Police Department met defendant there and drove her back to Detective Skaggs's office.

Detective Skaggs surreptitiously recorded the interview with defendant. After establishing the rental car had been involved in a shooting, the detective told defendant, "Even though I don't have somebody that says that a young black female shot a gun out of a car that hurt somebody, any participation you have and any lies to me, in regards to this investigation, is a crime." The interview then focused on what defendant knew about the involvement of her brother Nehemiah Robinson, her cousin Toyrion Green, and brothers Bryant and Byron Clark, lifelong friends she considered "family," in the shooting. Defendant told the detective Robinson borrowed the rental car the evening before to visit a girl. That morning, one of the Clark brothers telephoned defendant, told her to report the rental vehicle as stolen and asked to be picked up and given money to pay for a motel room. When defendant picked them up, Robinson, Green, and the Clarks told her the previous evening had been a setup. They arrived at the girl's location, but someone blocked them in and others started shooting; they shot their way out. They thought a man was dead. They abandoned defendant's rental car and fled. They added the police would never find the guns.

Robinson, Green, and the Clarks were subsequently charged with murder. When the case went to trial in 2008, however, defendant failed to appear, although subpoenaed as a

3

witness.  Attempts to locate her were unsuccessful, and the murder case was dismissed.

In April 2015, defendant was located, subpoenaed, and held in custody as a material witness.  The criminal case against Robinson, Green, and the Clarks recommenced.  During the June 11, 2015 preliminary hearing—despite a grant of immunity and after declining a relocation offer—defendant refused to testify.  The trial court held her in contempt.  Ultimately, the murder charges against the four men were once again dismissed.

Defendant was then charged with four felony counts of being an accessory after the fact to murder and one misdemeanor count of contempt for refusing to testify.  She testified in her own trial and provided several reasons for refusing to testify in the murder case:  she feared retaliation by the gang (she had experienced retaliation in the past); she feared for her safety and that of her daughter; she did not want to alienate her family; all four of the accused were family to her, and she did not want them to go to prison for the rest of their lives because of her testimony.  Defendant further acknowledged that when she refused to testify in 2015 she knew her failure to appear as a witness in 2008 had led to the murder case being dismissed.  But she denied she was helping her brother avoid trial.  She testified:  "Well, you guys are saying that I am helping my brother avoid trial.  I believe you guys still have a case without me."  She added she did not testify because "[f]amily is first."

## DISCUSSION

### I.    Sections 32 and 166

Defendant was convicted of four counts of being an accessory after the fact in violation of section 32.  Section 32

4

defines an accessory as "[e]very person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony."  A "principal" includes "[a]ll persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . ."  (§ 31.)  Being an accessory after the fact is a "wobbler" offense, punishable as either a misdemeanor or felony.  (§ 33.)

"The crime of accessory consists of the following elements: (1) someone other than the accused, that is, a principal, must have committed a specific, completed felony; (2) the accused must have harbored, concealed, or aided the principal; (3) with knowledge that the principal committed the felony or has been charged or convicted of the felony; and (4) with the intent that the principal avoid or escape from arrest, trial, conviction, or punishment."  (*People v. Plengsangtip* (2007) 148 Cal.App.4th 825, 836 (*Plengsangtip*); accord, *People v. Tran* (2013) 215 Cal.App.4th 1207, 1219, fn. 7 (*Tran*).)  As section 32 expressly states, an accessory must know he or she is assisting a felon or one who has been charged with or convicted of a felony.  (*Tran, supra,* 215 Cal.App.4th at p. 1219.)  The effect of an accessory's actions is "to lessen the chance that the perpetrators will be captured and held accountable for their crimes."  (*People v. Cooper* (1991) 53 Cal.3d 1158, 1168.)

A defendant may be convicted of being an accessory even if the principal is not prosecuted. (§ 972.) Section 972 provides: "An accessory to the commission of a felony may be prosecuted, tried, and punished, though the principal may be neither prosecuted nor tried, and though the principal may have been acquitted." The prosecution against defendant as an accessory after the fact properly went forward even though Robinson, Green, and the Clarks were never brought to trial.

Defendant was also convicted of misdemeanor contempt for refusing to testify. Section 166 sets forth conduct constituting a contempt of court. Under subdivision (a)(6), a contempt includes "[t]he contumacious and unlawful refusal of a person to be sworn as a witness or, when so sworn, the like refusal to answer a material question." Contempt under section 166 is a general intent crime. (*People v. Greenfield* (1982) 134 Cal.App.3d Supp. 1, 4.)

## II. Prosecutorial Overreaching

Defendant argues charging her with crimes purportedly carrying a potential 40-year sentence[3] constituted prosecutorial

---

[3] The information erroneously indicated each accessory count carried a potential 10-year enhancement based on section 186.22, subdivision (b)(1)(C). Subdivision (b)(1)(C) applies where the crime committed is a violent felony and adds 10 years to a sentence. Being an accessory after the fact is not a violent felony. (§ 667.5, subd. (c).) In any event, the jury verdict form specified section 186, subdivision (b)(1), and the applicable gang enhancement, subdivision (b)(1)(A), could add two, three, or four years to the base term. As indicated, however, the jury did not find the gang allegations to be true.

overreaching and asks this court to "emphatically reject this prosecutorial overreach, and reaffirm that recalcitrant witnesses can be subjected to coercion and punishment for contempt, but cannot be thrown in prison for decades."  Defendant, however,

---

A misdemeanor contempt conviction is punishable by up to six months in the county jail.  (§§ 19, 166, subd. (a)(6).)  A gang benefit finding under section 186.22, subdivision (d) elevates the offense from a straight misdemeanor punishable by up to six months in the county jail to a "wobbler"; subdivision (d) of section 186.22 is an alternate penalty provision that gives the trial court discretion for sentencing purposes to treat the contempt as a misdemeanor punishable more severely by up to one year in the county jail or as a felony punishable by one, two, or three years in state prison.  (§ 186.22, subd. (d); *People v. Fuentes* (2016) 1 Cal.5th 218, 224; *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 897, 909; *People v. Arroyas* (2002) 96 Cal.App.4th 1439, 1444-1445.)

However, when a defendant is convicted of being an accessory after the fact for refusing to testify, any sentence for the misdemeanor contempt conviction based on the same act is subject to a section 654 stay.  (*People v. Mesa* (2012) 54 Cal.4th 191, 199-200; *People v. Louie* (2012) 203 Cal.App.4th 388, 399 ["a single criminal act may result in only one punishment, even if the defendant harbored multiple objectives"].)

Had the jury found defendant committed the crimes for the benefit of a criminal street gang, the maximum sentence would have been 12 years:  on count 1, three years (§ 32) plus four years (§ 186.22, subd. (b)(1)); on counts 2, 3, and 4, an additional eight months each (§ 32), plus one year per count (§ 186.22, subd. (b)(1)); and on count 5 (contempt), an additional three years (§§ 166, subd. (a)(6), 186.22, subd. (d)) stayed pursuant to section 654.  Because the jury did not find the gang allegations to be true, defendant's maximum exposure was five years.  As noted, she was given probation.

7

has not shown she raised this argument in the trial court. Nor does she cite any authority on prosecutorial overreaching in support of her claim. She cites no authority precluding the accessory and contempt charges based on her refusal to testify. The Attorney General did not specifically address the overreaching claim in his brief or at oral argument. Defendant forfeited the issue by failing to raise it in the trial court.

Defendant's forfeiture notwithstanding, there is precedent for an accessory conviction under the facts of this case. Under similar circumstances, our Courts of Appeal have held defendants were properly charged with or convicted of being accessories. In *Plengsangtip, supra,* 148 Cal.App.4th at pages 835 through 839, for example, the Court of Appeal held evidence adduced at a preliminary hearing sufficed to support an accessory charge where the defendant lied to a detective and falsely denied knowledge of a murder with the intent to shield the murderer. In *In re I.M.* (2005) 125 Cal.App.4th 1195, 1203-1206 (*I.M.*), the Court of Appeal held substantial evidence supported sustaining a juvenile delinquency petition where the minor, with the intent the principal escape prosecution, falsely told police the principal shot the victim in self-defense or heat of passion. And in *People v. Duty* (1969) 269 Cal.App.2d 97, 100-105 (*Duty*), the Court of Appeal concluded substantial evidence supported the defendant's accessory conviction where he gave a false alibi to the public investigator with the intent to shield the perpetrator of the crime from prosecution and punishment.

Under federal law, an individual who refuses to testify despite an immunity grant with the intent to aid a felon and who is convicted of criminal contempt may be sentenced by analogy to the crime of being an accessory after the fact. (E.g., *United States*

*v. Brady* (1st Cir. 1999) 168 F.3d 574, 576 (*Brady*); *United States v. Ortiz* (7th Cir. 1996) 84 F.3d 977, 978-979 (*Ortiz*).) This scenario arises because there is no federal sentencing guideline specific to criminal contempt. (*Brady, supra,* 168 F.3d at p. 577; *Ortiz, supra,* 84 F.3d at p. 979.) Instead, the United States Sentencing Guidelines provide that in the case of criminal contempt, the sentencing court should adopt the sentencing guideline for the most analogous criminal conduct.[4] (U.S.S.G. §§ 2J1.1, 2X5.1[5]; *Brady, supra,* 168 F.3d at p. 576; *Ortiz, supra,* 84 F.3d at p. 979.)

In *Brady,* the defendant's refusal to testify despite immunity was motivated in part by a desire to frustrate a grand jury investigation of a robbery-murder and protect his friends. Accordingly, the sentencing guideline for accessories after the fact was appropriately applied. (*Brady, supra,* 168 F.3d at pp. 576-581.) In *Ortiz,* by contrast, the defendant's refusal to testify despite immunity was not designed to assist another defendant to escape punishment; the defendant simply did not want to testify. Under those circumstances, it was error to apply the accessory

---

[4]     What constitutes the most analogous criminal conduct presents a mixed question of law and fact. (*Brady, supra,* 168 F.3d at p. 577.) The federal accessory after the fact statute provides: "Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact." (18 U.S.C. § 3.)

[5]     United States Sentencing Guideline section 2X5.1 provides in part: "If the offense is a felony for which no guideline expressly has been promulgated, apply the most analogous offense guideline."

after the fact sentencing guideline. (*Ortiz, supra,* 84 F.3d at pp. 980-982; see also *Wright v. McAdory* (Miss. 1988) 536 So.2d 897, 904 [murder witness could not be held in contempt for refusal to testify where immunity grant was inadequate because it did not encompass accessory after the fact liability].)

In this case, despite being held in custody as a material witness and offered immunity and relocation, defendant's refusal to testify was motivated in part by the desire to ensure that her brother, cousin, and lifelong friends were not convicted and incarcerated. As a result, four accused murderers avoided trial and possible conviction. The prosecution, having tried in vain to compel defendant's testimony, and no doubt desiring to discourage similar behavior by other witnesses, particularly in gang-related cases, resorted to the present prosecution. We find no legal authority precluding it.

We also note defendant's refusal to testify contrasts sharply with the conduct of victims and witnesses who, having previously made out-of-court statements concerning a crime, take the stand and then claim a lack of memory. Under those circumstances, if the witness's memory loss is feigned and the record supports the conclusion that the "I don't remember" statements are evasive and untruthful, the witness's out-of-court statements are properly admitted. (Evid. Code, §§ 770, 1235; *People v. Johnson* (1992) 3 Cal.4th 1183, 1219-1220.) Not so in a situation like this one, where defendant's refusal to testify because "[f]amily is first" did not permit her to be impeached with her prior out-of-court statements.

Defendant argues existing contempt remedies are adequate and by concluding otherwise we usurp the Legislature's function. We disagree. Defendant did much more than simply commit

10

contempt by refusing to testify. The jury found she refused to testify with the specific intent to help four accused murderers avoid trial, conviction, and punishment. The intent with which defendant acted distinguishes her level of culpability from that of a simple contempt. The nature and potential impact of defendant's conduct—here, the inability to prosecute accused murderers—renders the contempt penalty inadequate to enable a court to vindicate its authority and to maintain the dignity and respect that is its due. (See *In re McKinney* (1968) 70 Cal.2d 8, 12.)

Further, as discussed above, our courts recognize conduct of this nature *committed with the intent to shield an accused criminal* is punishable under the accessory law. (*Plengsangtip, supra,* 148 Cal.App.4th at pp. 835-839; *I.M., supra,* 125 Cal.App.4th at pp. 1203-1206; *Duty, supra,* 269 Cal.App.2d at pp. 100-105.) Our holding here is consistent with this prior decisional authority and does not displace the Legislature's power to prescribe punishment for crimes.

III. **Sufficiency of the Evidence as to the Accessory Convictions**

Defendant claims she cannot be guilty as an accessory after the fact because her silence—refusing to testify—is not an affirmative act. The Attorney General argues the law of the case doctrine applies and the issue was decided adversely to defendant when this court summarily denied her petition for a writ of mandate following the trial court's denial of her section 995 motion (*Partee v. Superior Court* (March 18, 2016, B270799) [nonpub. order]).

11

We disagree with the Attorney General's position. Although our order summarily denying defendant's writ petition included citations to legal authority, we did not issue an alternative writ or a written opinion. And, as defendant correctly argues, "the denial of a writ petition does not establish law of the case unless the denial is accompanied by a written opinion following the issuance of an alternative writ." (*Kowis v. Howard* (1992) 3 Cal.4th 888, 891; accord, *People v. Jones* (2011) 51 Cal.4th 346, 370, fn. 4.) The law of the case doctrine does not apply.

On the merits, however, we conclude defendant's refusal to testify supports her accessory convictions. "Mere silence after knowledge of [a felony's] commission is not sufficient to constitute the party an accessory." (*People v. Garnett* (1900) 129 Cal. 364, 366.) Some affirmative act is required. (*Ibid.*) An affirmative falsehood, for example, such as a false alibi made with the requisite knowledge and intent, will support an accessory conviction. (*Duty, supra,* 269 Cal.App.2d at pp. 101-104.) As will a false statement to police that the perpetrator acted in self-defense or in the heat of passion. (*I.M., supra,* 125 Cal.App.4th at pp. 1203-1205.) In contrast, "the mere passive failure to reveal a crime, the refusal to give information, or the denial of knowledge motivated by self-interest does not constitute the crime of accessory." (*Plengsangtip, supra,* 148 Cal.App.4th at p. 876, citing *People v. Nguyen* (1993) 21 Cal.App.4th 518, 527, 537-539.)

However, as we explained in denying defendant's writ petition: "Penal Code section 32 proscribes '[a]ny kind of overt or affirmative assistance to a known felon,' so long as the assistance is provided with the intent that the perpetrator avoid arrest,

12

trial, conviction, or punishment. ( . . . *Duty*[, *supra,*] 269 Cal.App.2d [at p.] 104.) The failure to act is not an 'overt or affirmative' act unless there is a duty to act. (See *People v. Heitzman* (1994) 9 Cal.4th 189, 197 ['when an individual's criminal liability is based on the failure to act, it is well established that he or she must first be under an existing legal duty to take positive action'].) A witness who has been subpoenaed and given immunity that is co-extensive with the scope of her Fifth Amendment privilege has a duty to testify. (Pen. Code, § 1324; *Kastigar v. United States* (1972) 406 U.S. 441, 453; *People v. Smith* (2003) 30 Cal.4th 581, 624.)" (*Partee v. Superior Court, supra,* at pp. 1-2.) Under these circumstances, defendant's "silence" was an overt or affirmative act falling within the terms of section 32 because she had a duty to testify at defendants' preliminary hearing.

There was also substantial evidence defendant refused to testify with the requisite intent to support an accessory after the fact conviction—that Robinson, Green, and the Clarks avoid arrest, trial, conviction or punishment. Until she was questioned by Detective Skaggs—after she falsely told the rental company the vehicle had been stolen—defendant did not report the shooting and possible death to the police. As defendant explained to Detective Skaggs, she provided transportation and money to her brother, cousin, and friends and reported the rental vehicle stolen even though she knew there had been a shooting in which her brother, cousin, and the Clarks were involved; someone had been shot and likely died; her brother and his companions fled the scene and abandoned the rental car; and they disposed of the guns used in the shooting. Defendant dismissed another cousin's suggestion she send Robinson to retrieve the abandoned vehicle

13

saying, "I don't want [him] to get in any trouble . . . ." She told the detective she was "trying to cover for [Robinson]." When Detective Skaggs encouraged defendant to bring "those boys" in, defendant said, "I don't want to do it." She refused to "try to talk sense to them." Defendant also said she would refuse to testify against them in court because "that's my family, you help them" and she did not want her testimony to send them to prison. She was reluctant to get involved: "I know they did it. And I know it's wrong, but . . . it's my family." Further, defendant testified in her own trial that when she refused to testify in 2015, she knew criminal charges against the four individuals had been dismissed in 2008 after she failed to appear.

## IV.   One Accessory Count Versus Four

Defendant argues even if there was sufficient evidence to convict her as an accessory, she could not be charged with and convicted of *four* accessory counts based on her single act of refusing to testify. We disagree.

Each accessory count specifically identified defendant as aiding a single individual in violation of section 32: count 1—Robinson, count 2—Green, count 3—Bryant Clark and count 4—Byron Clark. Each count also specifically alleged defendant harbored, concealed and aided the individual "with the intent that [he] might avoid and escape from arrest, trial, conviction, and punishment for" the charged felony—murder. Each count had its own verdict form and the jury found defendant guilty as an accessory as to each individual.

As discussed above, a person is guilty of being an accessory when, after a felony has been committed, he or she aids a principal in the felony, with knowledge the principal has

committed or been charged with the felony, and with the intent that the principal avoid or escape arrest, trial or punishment. (§ 32; *Plengsangtip, supra,* 148 Cal.App.4th at p. 836.)  Section 32 refers to a principal, that is, an individual who committed a crime.  By her refusal to testify, defendant aided four principals—her brother, her cousin, and two others she considered family—with the intent that each of them avoid or escape trial, conviction or punishment.  Under these circumstances, she was properly charged with and convicted of four separate violations of section 32.

The decisions defendant relies on for a contrary holding are unavailing.  In *People v. Perryman* (1987) 188 Cal.App.3d 1546, 1549, the principal committed two felonies.  The Court of Appeal held the defendant was nevertheless guilty of only one act of being an accessory after the fact:  "The crime of accessory after the fact is complete when the accused assists the principal in escaping apprehension knowing that person has committed a felony.  The number of the underlying felonies is not determinative of defendant's guilt.  Even if the defendant knew the principal committed more than one crime in a single transaction, he may be charged with only one act of being an accessory after the fact."  (*Ibid.*)

The issue here is not whether a principal committed multiple crimes, but whether defendant aided multiple principals.  Defendant may be convicted of being an accessory as to each of the four men she aided by refusing to testify; the refusal to testify against each individual was a separate crime.

*People v. Mitten* (1974) 37 Cal.App.3d 879 (*Mitten*), on which defendant also relies, is less helpful.  The defendant was charged with being an accessory after he helped bury two murder

15

victims' bodies.  (*Id.* at pp. 881-882.)  But the sole issue in *Mitten* was whether the trial court properly granted the defendant's motion to dismiss the information for improper venue.  *Mitten* did not hold a defendant can only be convicted of one count of being an accessory when there are multiple principals within the meaning of section 32.

Defendant further notes, "The prosecution . . . refused to concede that [she] could not be punished for all five counts under section 654, even though there could be no doubt of that under applicable law."  Section 654 states:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.  An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."  (§ 654, subd. (a).)  Defendant does not explain how any punishment violated section 654.  As noted above, imposition of sentence was suspended and defendant was placed on probation.  (See *People v. Martinez* (2017) 15 Cal.App.5th 659, 669 [section 654 claim not ripe for adjudication where imposition of entire sentence suspended and probation granted]; *People v. Wittig* (1984) 158 Cal.App.3d 124, 137 [no double punishment issue where imposition of sentence suspended and probation granted].)  Moreover, defendant does not explain how section 654 impacts her *convictions.*  Section 654 prohibits multiple *punishment,* not multiple *convictions.*  (*People v. Miller* (1977) 18 Cal.3d 873, 885.)

## V. The Failure to Instruct the Jury on the Elements of the Contempt Charged in Count 5

Defendant argues it was reversible error per se to refuse to instruct the jury on the elements of the contempt charge including, in particular, the requisite mental state. We agree the trial court erred, but find the error harmless.

Defendant was convicted of refusing to testify in violation of section 166, subdivision (a)(6), a misdemeanor. Section 166 states: "(a) . . . a person guilty of any of the following contempts of court is guilty of a misdemeanor: [¶] . . . [¶] (6) The contumacious and unlawful refusal of a person to be sworn as a witness or, when so sworn, the like refusal to answer a material question." Contrary to defendant's argument, the trial court did instruct the jury on the requisite mental state, advising the crime of "refusing to testify at a judicial proceeding as charged in Count 5" required general criminal intent. The trial court further instructed the jury on the meaning of general criminal intent.[6] The court failed, however, to instruct the jury on the remaining elements of the crime, i.e., that defendant be sworn as a witness and then refuse to testify. This was error, as a trial court has a sua sponte duty to instruct the jury on all the elements of a charged offense. (*People v. Merritt* (2017) 2 Cal.5th 819, 824.)

---

[6] The instruction read: "The following crime requires a general criminal intent: refusing to testify at a judicial proceeding as charged in Count 5. For you to find a person guilty of this crime, that person must not only commit the prohibited act or fail to do the required act, but must do so with wrongful intent. A person acts with wrongful intent when he or she intentionally does a prohibited act or fails to do a required act; however, it is not required that he or she intend to break the law. The act required is explained in the instruction for that crime."

17

Contrary to defendant's assertion, a failure to instruct on the elements of an offense is "amenable to harmless error analysis." (*People v. Merritt, supra,* 2 Cal.5th at p. 831) The error here was harmless. The information charged defendant with "refus[ing] to testify in a preliminary hearing" in violation of section 166, subdivision (a)(6). The evidence at trial was that defendant had refused to testify at the 2015 preliminary hearing in the murder case. Defendant admitted refusing to testify. The prosecutor explained the elements of the crime charged in count 5.[7] The prosecutor argued defendant was guilty of that crime because she refused to testify at the preliminary hearing. As we have observed, the trial court instructed the jury that the crime charged in count 5 was "failure to testify at a judicial proceeding." The jury's verdict form likewise identified the crime as "refusing to testify." The jurors, whom we presume to be intelligent and capable of understanding instructions (*People v. Bryant* (2014) 60 Cal.4th 335, 447), undoubtedly found defendant guilty on count 5 because she refused, with general criminal intent, to testify at the preliminary hearing. Here, "it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict"

---

[7] "I'm going to talk a bit about the law in terms of how it applies in this case. And we're going to start with count 5. The reason we're going to start with count 5 is because count 5 is the easiest count in this case. And why do I say it's the easiest? Because it has two elements that are undeniable. That the defendant was called as a witness at the preliminary hearing on June 11th of 2015. And that the defendant failed to testify. She had no lawful right [not] to testify. And she willfully disobeyed the orders of the court. She refused to answer all the questions I had asked when the court ordered her to answer those questions."

even if it had been specifically instructed on all the elements of the contempt charged in count 5. (*People v. Merritt, supra,* 2 Cal.5th at p. 831.)

## VI. Defendant's Statements to Detective Skaggs

Defendant asserts her statements to Detective Skaggs about the murder should have been suppressed because she was in custody during the interview and warnings were not given pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. The "in custody" claim raises questions of fact as to the circumstances of the interrogation. (*Duty, supra,* 269 Cal.App.2d at p. 105.) But defendant did not broach this issue in the trial court.[8] As a result, the parties had no opportunity to litigate the issue and the trial court had no opportunity to make factual findings as to the circumstances surrounding defendant's interaction with the detective. (*People v. Linton* (2013) 56 Cal.4th 1146, 1166; *People v. Cruz* (2008) 44 Cal.4th 636, 669 (*Cruz*).) Defendant forfeited this argument by failing to raise it in the trial court. (*Cruz, supra,* 44 Cal.4th at p. 669.)

Anticipating the forfeiture conclusion, defendant argues her trial counsel was ineffective for failing to challenge the prosecution's use of defendant's statements to the detective. We conclude defendant has not shown her trial attorney was ineffective. "To secure reversal of a conviction upon the ground of

---

[8] Defendant did briefly raise this issue during the June 11, 2015 preliminary hearing *in the murder case*, when defendant refused to testify, defense counsel argued in part that defendant had been interrogated in custody without *Miranda* warnings. The trial court found the argument irrelevant. Defendant concedes that ruling was correct.

ineffective assistance of counsel under either the state or federal Constitution, a defendant must establish (1) that defense counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney, and (2) that there is a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings. [Citations.] 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.] [¶] A defendant who raises the issue on appeal must establish deficient performance based upon the four corners of the record. 'If the record on appeal fails to show why counsel acted or failed to act in the instance asserted to be ineffective, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, the claim must be rejected on appeal.'" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003; accord, *People v. Carrasco* (2014) 59 Cal.4th 924, 982.) "When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Here, the record does not show why defendant's trial attorney failed to raise a Fifth Amendment claim; he was not asked to explain. Nor is it established that there simply could be no satisfactory explanation. Counsel may have concluded there was little or no basis for a Fifth Amendment objection because when defendant spoke with the detective she was *not a suspect but a witness* who expressed no reservations about talking to the detective and willingly told him what she had heard and observed

in the aftermath of the murder.  (See *People v. Lucas* (1995) 12 Cal.4th 415, 441-442.)  Under these circumstances, defendant's ineffective assistance claim is more appropriately resolved in a habeas corpus proceeding.  (*People v. Mai, supra,* 57 Cal.4th at p. 1009.)

## DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PARTIAL PUBLICATION

DUNNING, J.[*]

I concur:

KRIEGLER, Acting P. J.

---

[*] Judge of the Orange Superior Court appointed by the Chief Justice pursuant to article VI, section 6, of the California Constitution.

The People v. Starletta Partee
B276040


BAKER, J., Concurring in Part and Dissenting in Part



For 82 years, Penal Code section 32 has proscribed "harbor[ing], conceal[ing] or aid[ing] a principal" in his or her commission of a prior felony.  (Stats. 1935, ch. 436, § 1, p. 1484.)  Today, the majority affirms convictions under this statute that are, so far as the Attorney General is aware, literally unprecedented in its 82-year history.  (Rec. of Oral Arg. at 17:27-18:11, 19:11-19:35; see also Resp. Br. at 18-22.)  No California case has ever sanctioned use of Penal Code section 32, the accessory statute, to mete out felony punishment for a witness who merely opts to remain silent (as distinguished from a witness who affirmatively tells some falsehood in a police interview or while on the witness stand to throw the police or the jury off track).  Indeed, while I cannot claim to have conducted a fully exhaustive survey, I have discovered no court in any jurisdiction *nationwide* that has ever sanctioned this sort of an accessory after the fact prosecution.  (See generally 2 LaFave, Substantive Criminal Law (3d ed. 2017) § 13.6(a), pp. 547, 555-556 [reviewing the "great majority of the [accessory after the fact] provisions in the modern codes [that] specify the kinds of aid which are proscribed"—including harboring or concealing the criminal, providing means of avoiding apprehension, concealing or tampering with evidence, plus "a few jurisdictions [that] have

added the giving of false information in certain circumstances"—and observing, by contrast, "the mere failure to report the felony or to arrest the felon will not suffice" to support an accessory conviction].)

The oddity of today's decision is no accident, nor is it a manifestation of the old adage that there must be a first time for everything. It is rather a product of well-intentioned but flawed legal reasoning that courts have heretofore avoided: Believing the statutorily authorized criminal penalty for refusing to testify (six months in jail) is too light a punishment for refusing to testify against defendants charged with murder, the majority blesses the invocation of Penal Code section 32, which imposes a higher penalty. As I shall discuss, however, authority dating back at least 50 years explains that resort for what might be viewed as overly light penalties for contumacious witnesses must be to the legislative process. (*In re McKinney* (1968) 70 Cal.2d 8, 12-13 (*McKinney*); *In re Keller* (1975) 49 Cal.App.3d 663, 671 (*Keller*); see also *People v. Park* (2013) 56 Cal.4th 782, 789 ["It is the Legislature's function "'to define crimes and prescribe punishments . . .'""].) A prosecuting office's decision to type up felony charges using a statute ill-suited to the task is no adequate substitute, and the majority errs by refusing to say so.

I

California has laws that are meant to compel recalcitrant witnesses to testify—and to punish them when they refuse. The civil contempt statutes, Code of Civil Procedure sections 1218 and 1219, allow a trial judge that finds a witness in contempt of court to imprison the witness for five days (with a $1,000 fine), or until the witness performs the act he or she omitted to perform when

2

being found in contempt (assuming that act "is yet in the power of the person to perform"). (Code Civ. Proc., §§ 1218, subd. (a), 1219, subd. (a).) Apart from these remedies, California also provides for criminal contempt punishment of a witness who refuses to testify when lawfully ordered to do so. Penal Code section 166 provides that a person who "contumacious[ly] and unlawful[ly] refus[es] . . . to be sworn as a witness or, when so sworn, . . . refus[es] to answer a material question" is guilty of a misdemeanor.[1] (Pen. Code, § 166, subd. (a)(6).)

Going back decades, California courts have heard—and rejected—arguments to evade the limits imposed by these statutory penalties on the ground that they are insufficiently severe to punish a refusal to testify. In *McKinney, supra,* 70 Cal.2d 8, a witness refused to answer questions concerning when he first came into contact with a defendant charged with the murder of a police officer and assault with a deadly weapon. (*Id.* at p. 9.) The trial court purported to hold the defendant in criminal contempt under Penal Code section 166. (*Id.* at pp. 9-10.) The Attorney General conceded on appeal that the trial court had done so improperly but argued the sentence should be upheld because the court had inherent contempt power to imprison the witness that the Legislature could not curtail. (*Id.* at p. 10.) Our Supreme Court rejected that argument, stating "[t]he Attorney General, though framing the limits of the court's inherent power in language of an 'adequate' sentence in fact argues for 'unbridled power' [citation]." (*Id.* at pp. 12-13.) The Supreme Court acknowledged a trial court's contempt power

---

[1]    A misdemeanor offense, of course, is punishable by six months in jail and a $1,000 fine. (Pen. Code, § 19.)

"must 'be sufficient to enable the courts to vindicate their authority and maintain the dignity and respect due to them' [citation]" but concluded the existing sanctions provided by the Legislature, i.e., the civil and criminal contempt statutes already described, were adequate for a trial court to vindicate its authority and maintain its dignity. (*Id.* at p. 12.)

In a case decided seven years later, *Keller*, *supra*, 49 Cal.App.3d 663, the Court of Appeal again rejected an argument that would permit an end-run around the sanctions that the contempt statutes provide for refusing to testify. In that case, a college professor witnessed an attempted robbery and provided a statement to the police, but later informed the prosecution he would not testify if called as a witness at trial "for reasons of conscience." (*Id.* at p. 664.) The prosecution sought the professor's testimony anyway and he refused to answer six questions concerning the attempted robbery. (*Id.* at pp. 665-666.) The professor was held in contempt on six separate counts (corresponding to the six questions) and sentenced to 15 days in jail (five days each for three of the questions) and a $1,500 fine ($500 each for the other three questions). (*Id.* at p. 666.)

On appeal, Keller argued the imposition of cumulative penalties for his refusal to answer a series of related questions was improper. (*Keller*, *supra*, 49 Cal.App.3d at p. 666.) The Court of Appeal agreed and held the trial court exceeded its authority in making multiple contempt findings for what amounted to one contempt. (*Id.* at p. 669.) In the course of so holding, the *Keller* court acknowledged the argument that "the maximum punishment which [it held] the court can here lawfully impose (five days in jail and/or [a] $500 fine (Code Civ. Proc., § 1218)) may not be 'significant' or 'substantial' *enough* to

4

effectuate its objective of promoting a recalcitrant witness to testify . . . ." (*Id.* at p. 671.) But, importantly, the Court of Appeal explained this was "not a proper ground on which to analyze whether one or more contempts has taken place" because "[t]he answer lies in legislative reform of the existing power of the court to punish for the type of contempt committed by Keller." (*Ibid.*) The *Keller* court specifically cautioned that permitting counsel "to devise questions that might stand up as separate contempts" were "mere devices to permit effective punishment and are unfitting to the dignity of the judicial process." (*Ibid.*)

In the many years since *McKinney* and *Keller*, the Legislature has not seen fit to significantly increase the penalties set by the contempt statutes, which, with the possible exception of the coercive contempt remedy (Code Civ. Proc., § 1219), continue to authorize a maximum of six months in jail. The prosecution in this case, however, apparently believed— mistakenly, in my view—that it had come upon a means of taking action where the Legislature has not.

## II

Defendant Starletta Partee (defendant) is Nehemiah Robinson's sister and Toyrion Green's cousin. Both men, along with two others, were charged with murder in connection with what was alleged to be the gang-related shooting of victim Anthony Owens (Owens).

After the alleged murder, Los Angeles Police Department detective John Skaggs interviewed defendant (the interview was recorded). During the interview, defendant made statements tending to incriminate the four men as having committed, or having been involved in, Owens' murder. As the majority opinion

details, defendant thereafter failed to appear as a witness at the trial of the four men, the case against the men was dismissed, police later located defendant and took her into custody, prosecutors then re-filed the case against the men, and when called as a witness at the preliminary hearing in the re-filed case where all four men were present, defendant refused to be sworn to testify and refused to answer questions posed by the prosecutor. Following defendant's refusal, the murder case against defendant's brother, her cousin, and the other two men was again dismissed.

The prosecution responded by charging defendant with one count of criminal contempt under Penal Code section 166 for refusing to testify at the preliminary hearing. The prosecution also went further—invoking Penal Code section 32 to charge defendant with four felony counts of being an accessory to the murder after the fact (one count for each of the four accused murderers). The prosecution further elected to add a gang enhancement allegation in connection with all five charged counts, which substantially increased the maximum prison sentence defendant faced if convicted.[2]

Defendant proceeded to trial on all five charged counts against her. The only evidence introduced by the prosecution in an effort to establish she "harbor[ed], conceal[ed], or aid[ed]" (Pen. Code, § 32) her brother, cousin, and the other two men was defendant's silence in court, i.e., her refusal to take the witness

---

[2] The gang allegation, if found true, would make the otherwise misdemeanor violation of Penal Code section 166 eligible for punishment as a felony. (Pen. Code, § 186.22, subd. (d).) In rendering its verdict, the jury in this case found the gang allegations not true.

6

oath and to answer any questions. Testifying in her own defense, defendant maintained she refused to testify in the murder case because she feared gang retribution and because the four defendants were either actually family or like family to her. Apparently unpersuaded,[3] the jury convicted defendant on all counts charged against her.

At sentencing, the experienced trial judge declined to impose anywhere near the maximum authorized custodial sentence.[4] Instead, and likely understanding the issue was no longer whether defendant could be coerced into testifying against her brother and the other accused men but rather how severely she should be punished for refusing to do so, the trial judge placed defendant on probation for three years.[5]

The imposition of a probationary sentence, however, does not make this a no-harm-no-foul case. A felony conviction carries

---

[3]     The jury was instructed with CALCRIM No. 440 on the elements of a Penal Code section 32 violation. The instruction informed the jury it must find defendant "either harbored, concealed or aided the perpetrator" after the felony (the alleged murder) had been committed. The jury was provided no further definition of the term "aided."

[4]     During the sentencing hearing, the judge noted that over the course of his 45 years in the "business," this case was "one of the first times [he had] ever seen a case in which someone is prosecuted for refusing to testify after they've been given full immunity."

[5]     The trial judge stated he found the argument that the four men charged with murder would have been convicted had it not been for defendant's refusal to testify to be "conjecture, speculation and maybe guesswork."

various consequences a misdemeanor does not, and as I now explain, defendant's silence when called as a witness was insufficient to prove a violation of the accessory statute.

### III

All legal sources that courts properly consult lead to the same conclusion: a mere refusal to testify is not a proper basis for a Penal Code section 32 prosecution. The conclusion flows from the text of the accessory statute as informed by established canons of statutory interpretation; from California precedent that has addressed the bounds of who may be prosecuted as an accessory; and from the laws and practices of sister states, some of which recognize the special problem of punishing a witness for refusing to incriminate family members.

### A

Penal Code section 32 provides in full as follows: "Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony." The elements of the offense therefore required proof that defendant *both* "harbored, concealed, or aided" the accused murder defendants and did so with the intent they avoid trial, conviction, or punishment. (*People v. Tran* (2013) 215 Cal.App.4th 1207, 1219, fn. 7 [listing all elements of a Penal Code section 32 violation].) The majority's extended discussion of defendant's intent correctly concludes that element was satisfied. But intent is not the critical issue in this

8

case.  What was lacking is proof that defendant's silence amounted to harboring, concealing, or aiding her brother and his confederates.

No one believes there was evidence that would allow the jury to conclude defendant "harbored" or "concealed" defendant and the other three men—not the Attorney General and not the majority.  The meaning of those verbs simply would not support such a finding.  So the question of affirmance or reversal of the Penal Code section 32 convictions reduces to what "aid[ed]" means as used in Penal Code section 32 and whether defendant's preliminary hearing silence meets that definition.

The ordinary understanding of the word "aid" is susceptible to more than one definition, but most suggest some affirmative act of assistance.  Oxford's definition, for instance, states the verb means "[t]o give help, support, or assistance to (a person); to relieve from difficulty or distress, to succor."  (Oxford English Dict. Online (2018) http://www.oed.com/view/Entry/4303? rskey=TgKZpp&result=5&isAdvanced=false#eid [as of March 19, 2018].)  The element of affirmative assistance that is suggested by that definition is consistent with common usage; one would not usually say, for instance, that when two rival companies intend to bid on a contract and one fails to submit its bid on time, the untimely bidder has come to the aid of the other company.

Insofar as there is ambiguity in Penal Code section 32's use of the term "aided," however, the venerable *ejusdem generis* canon of statutory interpretation assists (aids, if you will) in resolving it.[6]  "[T]he principle of *ejusdem generis* suggests that

---

[6]  Use of the *noscitur a sociis* canon (*People v. Prunty* (2015) 62 Cal.4th 59, 73 ["a word literally 'is known by its associates'"]) would also come to the same point.

when "'specific words follow general words in a statute or vice versa,'" the general words ordinarily are best construed in a manner that underscores their similarity to the specific words." (*California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 939.)  With regard to the text of Penal Code section 32, the general word "aids" follows the more specific words "harbors" and "conceals," and a potentially broader understanding of "aids" should instead be cabined to meanings more akin to "harbors" and "conceals."

As we have already seen, there is not even an argument that what defendant did here would constitute harboring or concealing.  And as a conceptual matter, the common usage of the words harbor and conceal incorporates an element of affirmative assistance—the provision of food or shelter, or acts taken to hide something from view or discovery.  (*People v. Garnett* (1900) 129 Cal. 364, 366 ["The word 'conceal,' as here used, means more than a simple withholding of knowledge possessed by a party that a felony has been committed.  This concealment necessarily includes the element of some affirmative act upon the part of the person tending to or looking toward the concealment of the commission of the felony"] (*Garnett*); see also *United States v. Shapiro* (2d Cir. 1940) 113 F.2d 891, 892-893.)  Penal Code section 32's use of "aids" should be understood similarly, i.e., to permit conviction only where an accused aids a felon in some affirmative sense.

This element of affirmative assistance went unsatisfied by the proof at trial.  Defendant's conduct was entirely passive—remaining silent when asked to take the witness oath and saying nothing when the prosecutor posed a series of questions to see if she would testify.  While it might fairly be said defendant refused

to aid the prosecution, that does not mean she also thereby aided her brother and the other accused men within the meaning of Penal Code section 32.

B

California cases that have addressed the meaning of Penal Code section 32 support the conclusion I reach.  The majority concludes otherwise by applying precedent incorrectly.

Let us begin with the meaning of Penal Code section 32 as a general matter.  Our Supreme Court has explained, as I have concluded from the text of the statute, that there must be proof of affirmative assistance to obtain a Penal Code section 32 conviction:  "The gist of the [Penal Code section 32] offense is that the accused '"harbors, conceals or aids" the principal with the requisite knowledge and intent.  Any kind of overt or affirmative assistance to a known felon may fall within these terms . . . . "The test of an accessory after the fact is that, he renders his principal some personal help to elude punishment [ ]—the kind of help being unimportant."  [Citation.]' (*People v. Duty* (1969) 269 Cal.App.2d 97, 104[ ].)" (*People v. Nuckles* (2013) 56 Cal.4th 601, 610 (*Nuckles*); see also *Garnett*, *supra*, 129 Cal. at p. 366 ["[C]oncealment necessarily includes the element of some affirmative act upon the part of the person tending to or looking toward the concealment of the commission of the felony.  Mere silence after knowledge of its commission is not sufficient to constitute the party an [accessory]"].)  The majority quotes this language from *Nuckles* but fails to accord it the significance it deserves (particularly the Court's reference to *affirmative* assistance) when analyzing the sufficiency of the evidence to support the Penal Code section 32 convictions.

11

Furthermore, the *Nuckles* court cited the Court of Appeal's decision in *People v. Duty*, *supra*, 269 Cal.App.2d 97 (*Duty*) with approval, and *Duty* even more precisely addresses the meaning and scope of Penal Code section 32 as relevant to the key issue presented here. In *Duty*, there was evidence that the defendant provided a false alibi for another suspected of arson. (*Id.* at pp. 102-103.) The question was whether this "inferably false statement" to the fire investigators was sufficient to convict the defendant as an accessory after the fact. (*Id.* at p. 103.)

The Court of Appeal observed that, at the time of its decision (in 1969), the question of "[w]hether a falsehood to the police or other public investigators may violate the accessory statute is a new question in California." (*Duty*, *supra*, 269 Cal.App.2d at p. 103.) The court explained that "[a]ccording to some American decisions, the offense is not committed by passive failure to reveal a known felony, by refusal to give information to the authorities, or by a denial of knowledge motivated by self-interest. On the other hand, an affirmative falsehood to the public investigator, when made with the intent to shield the perpetrator of the crime, may form the aid or concealment denounced by the statute." (*Id.* at pp. 103-104.)

The *Duty* court upheld the defendant's accessory conviction, but only because the defendant "had actively concealed or aided [the suspected arsonist] by supplying an affirmative and deliberate falsehood to the public authorities," which meant there was "more than passive non-disclosure." (*Id.* at p. 104.) Later California cases continue to adhere to this same principle: that an affirmative false statement can qualify as aiding an accused felon and may support an accessory after the fact conviction, but mere passive non-disclosure may not. (See, e.g., *People v.*

12

*Plengsangtip* (2007) 148 Cal.App.4th 825, 838 ["Indeed, a statement that one *knows nothing* about a crime, even if false, is equivalent to a passive nondisclosure or refusal to give information, which is insufficient to support an accessory charge"] (*Plengsangtip*); *People v. Nguyen* (1993) 21 Cal.App.4th 518, 539 [citing *Duty* for the proposition that "in some circumstances supplying an affirmative and deliberate falsehood to public authorities, such as by providing a false alibi, is sufficient to make the relator an accessory" but holding nothing in the defendant's statement to police investigators (which downplayed his role at the scene of the robberies) went so far].)

Despite the lack of evidence of any affirmative assistance to support a Penal Code section 32 conviction here, the majority nevertheless affirms defendant's conviction—offering two reasons to justify the result it reaches. Neither withstands scrutiny.

First, the majority opinion states "there is precedent for an accessory conviction under the facts of this case" because California courts have upheld convictions "[u]nder similar circumstances." (*Ante* at p. 8.) The opinion is wrong on this point—there is nothing similar about the present circumstances and those in the cases the majority cites. Rather, all of the California cases the majority cites are factually dissimilar in the most critical respect: each involves an affirmative false statement made by the defendant, not, as here, mere silence that constitutes passive non-disclosure.[7] (*Ante* at p. 8 [citing *Plengsangtip*, *supra*,

---

[7] The majority's citations to Federal sentencing guidelines cases are not persuasive for at least two related reasons. First, the Federal sentencing guidelines are advisory guides to punishment and the task, when no guideline clearly applies, is to find one that is most analogous even if dissimilar. The

13

148 Cal.App.4th at pp. 835-839 {"the defendant lied to a detective"}; *In re I.M.* (2005) 125 Cal.App.4th 1195, 1203-1206 {the minor "falsely told police the principal shot the victim in self-defense"}; *Duty, supra,* 269 Cal.App.2d at pp. 100-105 {the defendant "gave a false alibi to the public investigator"}].)

Second, the majority argues "defendant's 'silence' was an overt or affirmative act falling within the terms of [Penal Code] section 32 because she had a duty to testify" at the murder suspects' preliminary hearing. (*Ante* at p. 13.) As outlined by the majority, the argument is that she had a duty to testify because she had been subpoenaed and given immunity, and "'when an individual's criminal liability is based on the failure to act, it is well established that he or she must first be under an existing legal duty to take positive action.'" (*Ante* at p. 13.) This argument proves both too little and too much.

---

sentencing guidelines have nothing to say about the elements of an offense, and the majority cites no Federal case that holds a mere refusal to testify permits a *conviction* for being an accessory after the fact. Indeed, in both *United States v. Brady* (1st Cir. 1999) 168 F.3d 574 and *United States v. Ortiz* (7th Cir. 1996) 84 F.3d 977, the recalcitrant witnesses were charged with and convicted of criminal contempt, not being accessories after the fact. (*Brady, supra,* at p. 576; *Ortiz, supra,* at p. 978.) Second, in the Federal scheme, there is no felony-misdemeanor dichotomy as there is in California; both criminal contempt and being an accessory after the fact are punishable as felonies, with the criminal contempt statute (not the accessory statute as in California) being the one that authorizes more severe punishment—up to life in prison. (18 U.S.C. §§ 3, 401; see also *United States v. Wright* (1st Cir. 2016) 812 F.3d 27, 31-32.)

14

It is of course true that criminal liability for failure to act can only attach where there is a duty to act, but that does not resolve the key question, namely, *what* criminal liability? Defendant refused to testify when properly compelled, and there is a remedy for that: criminal contempt. The majority's argument therefore at most proves that defendant was properly convicted of *some* criminal offense and offers nothing persuasive to specifically establish that a conviction for "aiding" her brother and the other men, within the meaning of Penal Code section 32, was proper. At the same time, the argument also proves too much because if this is an "affirmative act" case, the majority leaves few that would not be; every possibly recalcitrant witness will get a subpoena, and every such witness, according to the majority, will therefore have a duty to testify and be an accessory to the related felony when refusing, so long as there is proof of the requisite knowledge and intent.[8] I see no reason to believe the Legislature intended to reach so far, and 82 years of criminal practice in this state tends to show otherwise.

## C

So far as I am aware, today's decision places California on the extreme outer edge of jurisdictions—indeed, in a group unto itself—concerning the reach of accessory after the fact punishment. As summarized by Professor LaFave, the specifics of what type of aid will suffice to support an accessory conviction

---

[8] The grant of immunity to defendant is beside the point and therefore does not cabin the majority's rationale. It is the subpoena that provides the compulsion—granting immunity simply removes an otherwise viable objection to complying with the subpoena.

15

vary somewhat from state to state, but "[f]ive kinds of aid usually are proscribed: (1) harboring or concealing the criminal; (2) providing him with certain means (e.g., a weapon, transportation, a disguise) of avoiding apprehension; (3) concealing, destroying or tampering with evidence; (4) warning the criminal of his impending discovery or apprehension; and (5) using force, deception or intimidation to prevent or obstruct the criminal's discovery or apprehension.  To this list, a few jurisdictions have [also] added the giving of false information in certain circumstances."  (2 LaFave, *supra*, § 13.6(a), pp. 555-556, footnotes omitted [citing state statutes].)  None of these categories extends to mere silence in the face of compulsion to testify.

Moreover, some sister states have partially or completely exempted a defendant from accessory liability where the person who the defendant assists is a close family member.  (See, e.g., Mass. Gen. Laws, ch. 274, § 4 ["Whoever, after the commission of a felony, harbors, conceals, maintains or assists the principal felon or accessory before the fact, or gives such offender any other aid, knowing that he has committed a felony or has been accessory thereto before the fact, with intent that he shall avoid or escape detention, arrest, trial or punishment, shall be an accessory after the fact . . . . The fact that the defendant is the husband or wife, or by consanguinity, affinity or adoption, the parent or grandparent, child or grandchild, brother or sister of the offender, shall be a defence to a prosecution under this section"]; Fla. Stat. § 777.03 ["Any person not standing in the relation of husband or wife, parent or grandparent, child or grandchild, brother or sister, by consanguinity or affinity to the offender, who maintains or assists the principal or an accessory

16

before the fact, or gives the offender any other aid, knowing that the offender had committed a crime and such crime was a third degree felony . . . with the intent that the offender avoids or escapes detection, arrest, trial, or punishment, is an accessory after the fact"].)[9] California obviously has no similar exemption, and I do not argue it should. But we as a court should be especially wary of rendering a decision that makes this state a marked outlier, particularly when we have not considered all of the circumstances in which the more severe punishment of the accessory statute might be used in place of the established contempt statutory scheme (e.g., for a defendant who declines to incriminate his or her child when subpoenaed to testify).

IV

If today's decision stands, accessory charges for recalcitrant witnesses are now fair game. The majority believes that is a good thing, and I agree that solving crimes and bringing perpetrators to justice is undeniably important. But there are countervailing considerations when deciding how strongly to punish someone who does not assist in prosecuting crimes, and some weighing of the appropriate penalty in the balance is necessary. The Legislature has already done that weighing, and there are no workarounds.

The People do have an argument that some updating of the long-established contempt sanctions for refusing to testify, at least in certain cases, deserves consideration. But they are

---

[9] Other states do not provide an exemption for certain familial relationships but do provide for a reduction in punishment when the felon aided is a close family member. (See generally 2 LaFave, *supra*, § 13.6(a), p. 557.)

17

arguing in the wrong place.  The halls of the capitol in Sacramento, not Los Angeles-area courtrooms, is where that case must be made.

Defendant's Penal Code section 166 conviction is properly affirmed.  I respectfully dissent from the affirmance of defendant's four Penal Code section 32 convictions.


BAKER, J.